20367

STROUP SHEET METAL WORKS, INC., Respondent, v. The AETNA CASUALTY & SURETY COMPANY, Appellant.

(232 S. E. (2d) 885)

204

*Messrs. Love, Thornton, Arnold & Thomason,* of Green-
ville, *for Appellant,*

*Messrs. Watkins, Vandiver, Kirven, Long and Gable,* of Anderson, *for Respondent,*

February 24, 1977.

LITTLEJOHN, Justice:

During the period of October 1, 1971 to October 1, 1972, defendant Aetna Casualty and Surety Company (Aetna) had in effect its comprehensive liability insurance policy issued in favor of plaintiff Stroup Sheet Metal Works, Inc. (Stroup).

This action was commenced in March, 1975, by Stroup against Aetna, to collect losses, sustained by Stroup, growing out of a contract to supply a roof for the Iva Elementary School during the term of the policy.

The complaint alleges that on October 24, 1972, a suit (the first suit) was instituted by Taylor Construction Company, Inc. (Taylor), against two of its subcontractors, Bonitz Insulation Company of South Carolina (Bonitz) and Stroup, alleging that certain defects and damages caused by Bonitz and Stroup to a roof deck installed by Bonitz at the school resulted in damages to Taylor in the amount of $83,000.00.

Stroup alleges in this action against Aetna that under the terms of its insurance contract the damages as alleged by Taylor against Stroup fell within and were insured against under its policy of insurance. The complaint alleges that Stroup notified Aetna of the first suit and made demand on Aetna to afford coverage and defend the action; that Aetna denied coverage and refused to enter a defense on behalf of Stroup, in breach of the insuring contract, necessitating that Stroup retain its own attorneys to defend the action. Stroup also alleges that prior to trial of the first suit a compromise settlement was agreed upon, resulting in the payment by

Stroup to Taylor, by way of an offset, in the amount of $10,862.00. The prayer for relief asks judgment for this amount plus interest and attorney fees.

Aetna answered:

(1) Setting up a general denial, and

(2) Alleging that the policy did not provide coverage for the losses and damages sought by Taylor against Stroup in the first action, and

(3) Alleging that in any event the care, custody and control exclusion and other exclusions in the policy relieved it of liability to pay.

It was also the contention of Aetna in its answer that the settlement between Stroup and Taylor was not reasonable or effected in good faith.

The relevant policy provisions and exclusions are as follows:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which the insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such . . . property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, . . ."

The policy defines occurrence as follows:

" 'Occurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;"

The exclusionary provisions include the following:

"EXCLUSIONS

This insurance does not apply:

\* \* \* \* \*

(i) to property damage to

\* \* \* \* \*

(2) property used by the insured, or

(3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;

\* \* \* \* \*

(1) to property damage to the named insured's products arising out of such products or any part of such products;

(m) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;"

The facts out of which the controversy arises are as follows:

Taylor was the general contractor engaged to construct the Iva school building. Taylor subcontracted the roofing job to Bonitz and to Stroup. The roof was to be of the flat built-up type.

Under the contract Bonitz provided the roof deck. The roof deck consisted of a plyboard type material installed in 32" by 48" panels, onto which was poured liquid gypsum which hardened into a substance similar to concrete.

It was the job of Stroup to supply the roof, which was built by first nailing a layer of felt to the gypsum and then applying, alternately, layers of tar and layers of felt. Gravel was imbedded into the top layer of tar.

After the deck and roof had been installed, the architect's inspection, in May or early June, revealed that numerous panels in the roof deck had ruptured such that approximately 80% of the deck and roof had to be torn out and rebuilt.

As indicated in its letter to Stroup, dated June 20, 1972, Taylor admitted that:

"It has been mutually agreed that there are defects in the roof deck *which are not the responsibility of Stroup Sheet*

*Metal Works Inc.* These defects are where the gypsum deck is laminated or poured in layers which do not properly bond. *Where this condition exists it is agreed that Stroup Sheet Metal Works is not liable for the repairs."* (Emphasis added.)

Notwithstanding this admission that Stroup was not at fault, and notwithstanding the fact that it gave Stroup a contract to repair the defective roof, Taylor, on October 24, 1972, filed a complaint against both Bonitz and Stroup for damages for the cost of repairing the roof. The complaint in that suit will not be reproduced verbatim, but relevant portions are quoted for the purpose of showing the gravamen and nature of the action as it relates to the insurance coverage. It is alleged:

"I [T]hat this action *arises from a contract* to be wholly or partially performed in South Carolina.

\* \* \* \* \*

"VI That the defectiveness of the roof deck *was the result of the mismanagement, improper supervision and poor workmanship* of the Defendants in constructing the roof deck and in pouring and finishing the roof.

"VII That the Plaintiff [Taylor], pursuant to its contract with the owner [School], was obligated to correct all work rejected by the architect as defective and to bear all cost of correcting such rejected work.

"VIII That the cost to the Plaintiff to have the roof deck rebuilt was Eighty-three Thousand and 00/100 ($83,000.00) Dollars; and that *such cost was occasioned solely by the improper workmanship* of the Defendants." (Emphasis added.)

There can be no doubt but that this action was one for breach of contract for faulty workmanship. Negligence was not alleged and the complaint may not be characterized as sounding in torts. No occurrence (or accident) as defined in the policy was alleged.

This original complaint was served upon Aetna. Aetna refused to defend.

Thereafter, on December 6, 1972, an amended complaint was served upon Stroup, but a copy was never delivered to Aetna.

The amended complaint was the same as the original complaint except that paragraph VI, quoted hereinabove from the first complaint, was amended to read as follows:

"That the defectiveness of the roof deck was the result of the mismanagement, improper supervision and poor workmanship of the defendants in the following particulars:

"As to the Defendant Bonitz Insulation Company of South Carolina:

(a) In using defective materials;

(b) In improperly pouring the gypsum deck so that the two layers of overlapping gypsum were created which did not bond to each other;

(c) In pouring the gypsum in such a manner as to permit the gypsum to run beyond construction joints and in then pouring a second layer of gypsum over this overflow;

(d) In pouring the gypsum so that its thickness varied from $2\frac{1}{2}''$ to $1\frac{5}{8}''$ creating inconstant compression strengths in the roof deck.

"As to the defendant Stroup Sheet Metal Works, Inc.:

(a) In improperly stacking felts on the roof causing the panels to rupture;

(b) In improperly dumping gravel on the roof deck causing damage to the panels.

"That said damage was caused by the Defendants as set forth above either through their individual or several acts or in concert through the joint acts."

Like the original complaint, the amended complaint did not allege negligence and it, also, was a claim sounding in contract, based on faulty workmanship amounting to a breach of contract.

At the pretrial hearing before the judge, and throughout the entire trial, counsel for Stroup has taken the position that Aetna breached its contract of insurance by failing to defend the action; that it must suffer the consequences of the breach, and accordingly is obligated to pay both the compromise settlement in the amount of $10,862.00, and counsel fees for handling the case and negotiating settlement. At the pretrial conference the judge accepted this contention of Stroup's counsel and ruled in a written pretrial order as follows:

"The settlement carries a presumption of being made in good faith. It is the holding of this Court that until or unless the defendant presents evidence establishing that the plaintiff and its counsel acted in bad faith and unreasonably effected a settlement, the issue of liability to Taylor may not be litigated in this case.

"The burden of establishing unreasonableness or bad faith is upon the insurer."

Throughout the trial of the case the judge restricted counsel to the issue of whether the settlement between Stroup and Taylor was reasonable and effected in good faith.

Aetna moved for a directed verdict. The court ruled as a matter of law that Aetna had coverage and should have defended. The motion was denied.

The only issue submitted to the jury was whether the settlement was reasonable and effected in good faith. The jury found the settlement reasonable and in good faith, and returned a verdict for Stroup.

A motion for judgment notwithstanding the verdict was denied.

Aetna has appealed, alleging several errors. We think it necessary to dispose of only one basic issue in deciding the case. Aetna submits that the lower court erred in holding that it was under a duty to defend Stroup in the first suit brought by Taylor against Stroup and Bonitz. We agree.

The decision whether or not to defend a damaged person's suit against the insured is frequently difficult for the insurer. Generally speaking, the obligation of a liability insurance company under the policy provisions requiring it to defend an action is to be determined by the allegations of the complaint in such action. If the alleged facts in the complaint fail to bring the case within the policy coverage, the insurer is free of the obligation to defend. Here the claim is one in contract as opposed to negligence.

After Aetna refused to defend the original complaint, it is obvious that Taylor appreciated the fact that no liability insurance coverage was afforded for the cause of action stated. In an effort to bring the claim under the coverage of the policy, an amended complaint was served on Stroup, the insured, but not delivered to Aetna, the insurer. Aetna submits that failure to deliver the amended complaint to it relieves it of all liability to defend. Stroup counters with the argument that services of the amended complaint were not required because Aetna had made its own investigation of the facts and had refused to defend the original complaint, denying coverage.

The amended complaint should have been delivered to Aetna, but such failure is of no real significance. Neither complaint alleged an occurrence or accident as defined in the policy. Both alleged:

"1. . . . this action arises out of a contract . . .

"2. . . . the defectiveness was the result of the mismanagement, improper supervision and poor workmanship . . .

"3. . . . that such cost [$83,000.00] was occasioned solely by the improper workmanship of the Defendants."

We think that the lower court erred in its. initial conclusion, at the pretrial stage, and again at the directed verdict stage that, as a matter of law, Aetna was obligated to defend. An insurance company fails to

defend at its own peril, but it is obligated to defend only actions involving claims covered by the insuring contract. The answer of Aetna denied that its policy covered the claim involved in the original and amended complaints. An analysis of both documents, read in connection with the policy provisions, convinces us that neither complaint stated a cause of action covered by the insurance policy.

There is nothing in the policy provision that would warrant the conclusion that Aetna is obligated to pay for faulty workmanship, and that is the gist of Taylor's claim against Stroup throughout the entire transcript before this Court. The terms of the policy, quoted hereinabove, protect Stroup against "an accident . . . which results . . . in . . . property damage neither expected nor intended from the standpoint of the insured."

The fact that Aetna made its own investigation is not relevant. Its investigation could not have revealed more than Taylor, the general contractor, knew about its own claim. On June 20, Taylor knew, as stated in its letter to Stroup, quoted hereinabove, that "it is agreed that Stroup Metal Works is not liable for the repairs."

It is inescapable that Bonitz was to blame for the faulty workmanship, and it is difficult to understand why Taylor sued Stroup after completely exonerating Stroup in its letter signed by the president. In that same letter Taylor stated, "It is our intent to enter into a contract with Stroup Sheet Metal Works, Inc. on a time and material basis to strip back the gravel, cut the roofing, and replace the roofing after the gyp deck has been repaired." Taylor did employ Stroup to repair Bonitz' faulty work and obligated itself to Stroup in the amount of $60,000.00 for the repairs.

The claim as stated in the amended complaint remained one for breach of contract to provide a good roof. The allegation in the amended complaint that Stroup improperly stacked felt and improperly dumped gravel is merely a spe-

cification explaining Stroup's alleged "mismanagement, improper supervision and poor workmanship."

Having reached the conclusion that Aetna was not obligated to defend, it follows that a directed verdict in its favor should have been granted. It becomes unnecessary to discuss whether the roof was in the care, custody and control of Stroup so as to come within the exclusionary clause of the policy. It is also unnecessary to discuss whether the settlement between Taylor and Stroup, in the amount of $10,862.00, was reasonable and made in good faith.

Reversed.

LEWIS, C. J., and NESS, RHODES and GREGORY, JJ., concur.