567 S.E.2d 489

L–J, INC., and Eagle Creek Construction Co., Inc., Transcontinental Insurance Company, The Home Indemnity Company and The Maryland Commercial Insurance Group, Plaintiffs,

of whom Transcontinental Insurance Company, The Home Indemnity Company and The Maryland Commercial Insurance Group, Respondents,

v.

BITUMINOUS FIRE AND MARINE INSURANCE COMPANY, Appellant.

No. 3505.

Court of Appeals of South Carolina.

Heard April 9, 2002.

Decided June 3, 2002.

Rehearing Denied Aug. 22, 2002.

550

Charles E. Carpenter, Jr., Francis M. Mack and S. Elizabeth Brosnan, all of Richardson, Plowden, Carpenter & Robinson, of Columbia, for appellant.

Sean K. Trundy and I. Keith McCarty, both of Pratt Thomas, Epting & Walker, of Charleston, for respondents.

GOOLSBY, J.

In this declaratory judgment action, Bituminous appeals the circuit court's order that it indemnify Eagle Creek Construction Co., Inc., for a portion of a settlement L–J, Inc., and Eagle Creek reached with Dunes West Joint Venture, a South Carolina General Partnership. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On July 14, 1989, Eagle Creek Construction Co., Inc., a subsidiary of L–J, Inc. contracted with Dunes West Joint Venture to develop the site and construct the roads for the Dunes West subdivision at a cost of $3,632,458.75. Eagle Creek hired subcontractor, U.S. Construction Co., Inc., to clear, grub, rough grade, fine grade, and construct the sub-

base and base for roads within the project. U.S. Construction, in turn, hired Site Prep, Inc., and Destiny Construction, Inc., to perform some of these tasks. Eagle Creek also subcontracted for Tidelands Utilities Co., Inc., to construct and install a water drainage system. Another subcontractor, Sanders Brothers Construction, Inc., paved the roads.

The subcontractors completed the roads in 1990. By 1994, the road surfaces had deteriorated and failed. Testimony indicated drainage problems and an inadequate subgrade due primarily to tree stumps left in the roadbed. The stumps prevented the soil from being adequately compacted and allowed surface water and moisture to seep into the road base, deteriorating the pavement.

Dunes West filed an action in 1994 against Eagle Creek and L–J alleging *inter alia* breach of contract, breach of warranty, and negligence. L–J and Eagle Creek filed a third-party complaint against several of the project designers and subcontractors engaged to work on the Dunes West construction.

In 1997, L–J settled with Dunes West and agreed to pay $750,000.00. L–J requested that its four insurers from 1989 until 1996 indemnify it for the settlement amount. During the time period in which Dunes West alleged the damage to the roads occurred, L–J was insured by several different commercial insurers: Transcontinental Insurance Company, Bituminous Fire and Marine Insurance Company, The Home Indemnity Company, and The Maryland Commercial Insurance Group. All insurance companies except Bituminous agreed to indemnify L–J for a portion of the settlement amount. The insurers paid $362,500.00, and the project designers and subcontractors paid $387,500.00.

L–J, Eagle Creek, Transcontinental Insurance, The Home Indemnity, and The Maryland Commercial Insurance brought a declaratory judgment action against Bituminous. L–J and Eagle Creek sought indemnification for all defense costs and settlement payments. The three insurance carriers also sought contribution from Bituminous for defense costs and any settlement payment made in the Dunes West litigation. The matter was referred to a special master with finality, and a hearing was held on April 27, 2000.

The special master found the allegations of negligence set forth in Dunes West's complaint met the definition of "occurrence" under Bituminous's policy with L–J. The special master further found the failure of the road did not constitute damage "expected or intended" by Eagle Creek. The special master noted Bituminous's argument at the hearing that Dunes West's complaint alleged property damage to Eagle Creek's work "arising out of it and included in the products completed operations hazard," which is excluded from coverage under exclusion ($l$) of the policy. The special master, however, found the policy exclusion was inapplicable because the exclusion specifically provides it does not apply to damages resulting from work performed by a subcontractor and all the parties agreed the work to the roads was exclusively performed by subcontractors.

The special master awarded the other carriers a proportionate contribution from Bituminous. The special master found that the years 1989 to 1996 represented a total of seven "policy years," and that Bituminous provided coverage to L–J for two years. Taking the total $362,500.00 paid by the other three carriers and dividing it by seven years of coverage, the special master determined that each carrier owed $51,785.71 per policy year. Thus, Bituminous owed the other carriers $103,571.42 for two years of coverage.

Bituminous appeals.

## DISCUSSION

Bituminous argues the master erred in finding it had a duty to indemnify L–J because: (1) faulty workmanship cannot constitute an "occurrence" under the policy; (2) the policy excludes claims for faulty workmanship; and (3) exclusion ($l$) did not "extend" coverage for faulty workmanship.

■ "Questions of coverage and the duty of a liability insurance company to defend a claim brought against its insured are determined by the allegations of the third-party's complaint." [1] The underlying complaint alleged *inter alia* negligence, breach of contract, and breach of warranty.

---

1. *Isle of Palms Pest Control Co. v. Monticello Ins. Co.,* 319 S.C. 12, 15, 459 S.E.2d 318, 319 (Ct.App.1994), *aff'd*, 321 S.C. 310, 468 S.E.2d 304

 L–J seeks a declaratory judgment to compel indemnification under an insurance policy. A declaratory judgment action to determine coverage under an insurance contract is an action at law.[2] In an action at law, referred to a master for entry of final judgment, the appellate court will not disturb the findings of fact unless there is no evidence that reasonably supports them.[3] Our scope of review in this case is therefore limited to correcting errors of law.[4]

 Bituminous first contends the master erred in finding there was an "occurrence" under the policy because faulty workmanship can never constitute an "occurrence."

Insurance policies are subject to the general rules of contract construction. The Court must give policy language its plain, ordinary, and popular meaning. When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used. Furthermore, exclusions in an insurance policy are always construed most strongly against the insurer.[5]

We thus look to the language of the policy to determine whether the deterioration and failure of the roads from repeated water runoff is an "occurrence." The policy provides coverage for property damage caused by an "occurrence" and defines "property damage" as:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

---

(1996) (citing *C.D. Walters Constr. Co. v. Fireman's Ins. Co. of Newark, N.J.*, 281 S.C. 593, 316 S.E.2d 709 (Ct.App.1984)).

2. *Travelers Indem. Co. v. Auto World of Orangeburg*, 334 S.C. 137, 511 S.E.2d 692 (Ct.App.1999).

3. *Townes Assocs. Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E.2d 773 (1976).

4. *Id.*

5. *Century Indem. Co. v. Golden Hills Builders*, 348 S.C. 559, 565, 561 S.E.2d 355 (2002) (citations omitted).

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

There is no coverage for property damage that is "expected or intended from the standpoint of the insured." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." In this case, it is undisputed that repeated exposure to surface water runoff caused the pavement to fail. The pavement is tangible property. The policy provides coverage for continuous and repeated exposure to harmful conditions causing damage to tangible property. Under the clear language of the policy, the repeated exposure to water is an "accident" and therefore an "occurrence."

It is further undisputed L–J did not perform the work on the sub-road. The work was performed by subcontractors. There is no evidence L–J knew of the problems with the sub-road until the surface pavement damage became apparent years later. Because L–J did not improperly construct the sub-road or have knowledge of the improper construction, there is no evidence that L–J expected or intended that the pavement would fail. Under the plain and unambiguous language of the policy, there is an "occurrence." [6]

 Bituminous argues, however, that the policy language regarding the definition of "occurrence" should be construed in light of the business risk doctrine.

The business risk doctrine is the expression of a public policy applied to the insurance coverage provided under commercial general liability policies. Reduced to its simplest terms, the risk that an insured's product will not meet contractual standards is a business risk not covered by a general liability policy.

\* \* \*

Significantly, under the business risk doctrine, harm to the property of a third party caused by the insured's

---

6. *See Kalchthaler v. Keller Constr. Co.*, 224 Wis.2d 387, 591 N.W.2d 169 (Wis.Ct.App.1999) (finding water damage to interior of building from defectively installed window was an "occurrence").

defective work is *not* excluded from coverage.[7]

Relying on this doctrine, Bituminous disregards the damage to the pavement and contends that faulty workmanship alone is at issue and that there was therefore no "occurrence."[8] Bituminous also argues that faulty workmanship can never be an "occurrence" under a comprehensive general liability (CGL) policy.

We agree that faulty workmanship, standing alone, does not constitute an "accident" and cannot therefore be an "occurrence." In *Isle of Palms Pest Control Co.,*[9] this court construed identical policy definitions and found that faulty workmanship *alone* is not covered but *faulty workmanship that causes an accident is covered.* In that case, the court found that later termite damage to property caused by Isle of Palms's negligent failure to identify the presence of termites during its inspection was an "accident." The court noted "[h]ad there been preexisting termite damage, but no active termite infestation, the Purchaser's claim against Isle of Palms would have been one for faulty workmanship resulting in only economic losses."

Similarly, in this case, had the pavement not failed and Dunes West brought an action to recover the cost of removing the tree stumps from the roadbed, the defective work, stand-

---

7. *Thommes v. Milwaukee Mut. Ins. Co.,* 622 N.W.2d 155, 158–59 (Minn. Ct.App.2001), *review granted,* (Minn. May 15, 2001) (emphasis in original) (citations omitted).

8. As noted in a recent article:

 The CGL policy expressly states that it is the "property damage" for which the plaintiff seeks recovery that must not be expected or intended—not the construction activity that causes that property damage.

 * * *

 The [insurance] industry has now taken to arguing that whenever a claim of defective construction is alleged against an insured, the claim is automatically barred from coverage as not constituting an "occurrence." The position is nothing more than a rehash of the "business risk" doctrine, whose success depends entirely on courts ignoring the actual language of the CGL policy.

 James Duffy O'Connor, *What Every Construction Lawyer Should Know About CGL Coverage for Defective Construction,* 21–WTR Constr. Law. 15, 17 (2001) (citation omitted).

9. 319 S.C. 12, 459 S.E.2d 318 (Ct.App.1994).

ing alone, would not have been "property damage" or an "occurrence" under the policy. The damages, however, extend beyond the cost of removing the tree stumps because the failure to properly compact the roadbed led to property damage, namely, the failure of the road surfaces. These remote damages were an "accident" not expected or intended by the insured.

 Having found there was an "occurrence" under the policy, we look to the policy exclusions. Exclusion j(6) states the insurance does not cover "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' [10] was incorrectly performed on it." This is a standard CGL business risk exclusion [11] and would appear to bar coverage in this case. But the policy further states, "[p]aragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'"

The products-completed operations hazard provision includes:

all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" *except:*

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

---

10. "Your work" means:
 a. Work or operations performed by you or on your behalf; and
 b. Materials, parts or equipment furnished in connection with such work or operations.
 "Your work" includes:
a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
b. The providing of or failure to provide warnings or instructions.

11. *See Thommes,* 622 N.W.2d at 159–160 (stating an identical provision "may be read as the embodiment of the business risk doctrine principles" and exclusions (j), (k), (*l*), (m), and (n) are commonly recognized as the "business risk" exclusions) (citations omitted).

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed. (Emphasis added).

The roads were competed in July 1990. Bituminous insured L–J from May of 1990 to May of 1992. The special master found there was property damage during this time. The "products-completed operations hazard" provision is therefore applicable.

Resuming our examination of the policy, we come to exclusion (*l* ). This exclusion bars coverage for "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". (sic).

Once again an exclusion appears to bar coverage, but reading further we see the "your work" exclusion "does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." It is undisputed in this case that the defective work was performed by a subcontractor. This clear and unambiguous policy language restores coverage.

The exception to the "your work" exclusion did not appear in CGL policies prior to 1986.[12] The effect of this exception on a CGL policy is a novel question in this state. Bituminous argues this provision cannot "extend" coverage. Because the same CGL policies are found throughout the country, we look to other jurisdictions for guidance. The Wisconsin Court of Appeals in *Kalchthaler v. Keller Construction Company*[13] concluded:

For whatever reason, the industry chose to add the new exception to the business risk exclusion in 1986. We may

---

**12.** *Kalchthaler v. Keller Constr. Co.*, 224 Wis.2d 387, 591 N.W.2d 169.

**13.** *Id.*

not ignore that language when interpreting case law decided before and after the addition. To do so would render the new language superfluous. We realize that under our holding a general contractor who contracts all the work to subcontractors, remaining on the job in a merely supervisory capacity, can insure complete coverage for faulty workmanship. However, it is not our holding that creates this result: it is the addition of the new language to the policy. We have not made the policy closer to a performance bond for general contractors, the insurance industry has.[14]

In another case construing an identical provision, *O'Shaughnessy v. Smuckler Corp.*,[15] the court held:

Here, we are faced not with an omission, but an affirmative statement on the part of those who drafted the policy language, asserting that the exclusion does not apply to damages arising out of the work of a subcontractor. It would be willful and perverse for this court simply to ignore the exception that has now been added to the exclusion.

We cannot conclude that the exception to exclusion ($l$) has no meaning or effect. The CGL policy already covers damage to the property of others. The exception to the exclusion, which addresses " 'property damage' to 'your work,' " must therefore apply to damages to the insured's own work that arise out of the work of a subcontractor. Thus, we conclude that the exception at issue was intended to narrow the Business Risk Doctrine.[16]

The *O'Shaugnessy* court cautioned, however, that its holding did not obviate the necessity that the subcontractor's faulty workmanship cause property damage.[17]

We find the above reasoning persuasive and conclude in this case that the products-completed operations hazard provision and the exception to exclusion ($l$) restore coverage. This is not, as Bituminous argues, an "extension" of coverage. In reaching this conclusion, we follow the analysis laid out by our

---

14. *Id.* at 174 (citation omitted).

15. 543 N.W.2d 99 (Minn.Ct.App.1996).

16. *Id.* at 104–05.

17. *Id.* at 105.

supreme court in *Century Indemnity.* In that case the court looked to the policy language to determine whether the products-completed operations hazard provision "restored" coverage. We note the *Century* case did not involve an exception to the business risk exclusion for work performed by a subcontractor. Nonetheless, we employ the same approach to policy language as our supreme court in that case.

## CONCLUSION

We affirm the master's finding that there was an "occurrence" under the policy and that Bituminous is liable for water damage to roads in the Dunes West subdivision occurring during its policy period. We note that Bituminous does not appeal the master's factual finding of property damage during this time. As such, that finding is the law of the case.[18]

We further find that the products-completed operations hazard and subcontractor exception provisions restore coverage that would otherwise have been excluded by the "your work" provision.

**AFFIRMED.**

HOWARD, J., concurs.

HEARN, C.J., dissents in a separate opinion.

HEARN, C.J.:

I respectfully dissent. Although I agree with the majority that exclusion (*l*) does not bar coverage here, I would not reach that question because I believe there was no occurrence.

Under the policy, there must be an occurrence to trigger insurance coverage. The policy defines occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Here, faulty construction resulted in the collapse of the construction project itself. Under our case law, faulty workmanship alone is not an occurrence; there must also be an accident. *Isle of Palms Pest Control Co. v. Monticello Ins. Co.,* 319 S.C. 12, 16,

---

**18.** *See Charleston Lumber Co. v. Miller Housing Corp.,* 338 S.C. 171, 525 S.E.2d 869 (2000) (holding an unappealed ruling becomes the law of the case).

459 S.E.2d 318, 320 (Ct.App.1994), *aff'd* 321 S.C. 310, 468 S.E.2d 304 (1996).

With respect to whether ordinary negligence of the insured or his agent is an accident, there is a decided split of authority among the states. *See generally* J.P. Ludington, Annotation, *Liability Insurance: "Accident" or "Accidental" as Including Loss Resulting from Ordinary Negligence of Insured or His Agent* 7 A.L.R.3d 1262 (1966 & Supp.2000). Some jurisdictions have found that injury caused by the insured's negligence is not an accident if the loss is a natural and probable consequence of the negligence. *Id.* at § 6. Other jurisdictions have found that the term accident is broad enough to cover negligence if the injury or damage was not intentional. *Id.* at § 5. I would hold that South Carolina falls into the first group.

The Fourth Circuit, construing South Carolina law, has found:

> In our case, neither the means nor the result was accidental, since the acts which caused the damage were persistently and continuously done and the results were the normal consequences of the acts. We do not mean to say that there may not be an accident as a result of negligence, but there was no such result in this case and it cannot be held that negligence is synonymous with accident.

*C.Y. Thomason Co. v. Lumbermens Mut. Cas. Co.*, 183 F.2d 729, 732–33 (4th Cir.1950) (citations omitted) (finding no coverage for negligent excavation of a ditch resulting in flooding and debris build-up in garage or for creating bump which damaged cars entering garage). In another case applying our law, the Fourth Circuit found that there was no accident for purposes of coverage where negligence was followed by a foreseeable consequence "for then neither the cause nor the effect is unexpectable. [sic]" *Baker v. Am. Ins. Co. of Newark, NJ*, 324 F.2d 748, 750 (4th Cir.1963) (finding coverage in case of negligently built retaining wall because century high rainfall exacerbated damage). These interpretations are consistent with South Carolina case law's definition of accident. *See Ducker v. Cent. Sur. & Ins. Corp.*, 234 S.C. 228, 230–31, 107 S.E.2d 342, 343 (1959) (adopting the following definition: "An effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which

the actor did not intend to produce and cannot be charged with the design of producing, ... is produced by accidental means."); *Mfrs. & Merchants Mut. Ins. Co. v. Harvey*, 330 S.C. 152, 159, 498 S.E.2d 222, 225 (Ct.App.1998).

I disagree with the majority's characterization of the damages here as remote and unexpected. The only damages in this case were the natural and proximate result of the faulty work. *See Stroup Sheet Metal Works, Inc. v. Aetna Cas. & Sur. Co.*, 268 S.C. 203, 213, 232 S.E.2d 885, 888–89 (1977) (finding no coverage for faulty workmanship because the damage could not be considered "neither expected nor intended...."). The record contains no allegations of an intervening and superseding cause that might be classified as accidental.

The majority contends that under *Isle of Palms* the damage here was caused by an occurrence. However, the facts and the focus of the inquiry there differ markedly from the instant case. In *Isle of Palms*, a termite inspector negligently failed to discover existing termite damage. The analysis centered on how that failure resulted in property damage as opposed to purely economic loss. In this case, there is no question about whether there was property damage; we are instead called to determine whether there was an occurrence. Moreover, the consequences and expectations in a negligent inspection scenario are not the same as those in a negligent construction case. I find the case of *Indiana Insurance Co. v. Hydra Corp.*, 245 Ill.App.3d 926, 185 Ill.Dec. 775, 615 N.E.2d 70 (1993) instructive because, unlike many of the other cases interpreting whether damage was caused by an accident, all of the damages were directly tied to the construction project. There, the court found no occurrence and thus no coverage because "the cracks in the floor and the loose paint on the exterior of the building are the natural and ordinary consequences of installing defective concrete flooring and applying the wrong type of paint." *Id.* at 73. The same reasoning applies here because neither the cause of the problem nor the damage that followed was unforeseeable.[19]

Accordingly, I would reverse.

---

**19.** For this reason, I believe *Kalchthaler v. Keller Construction Co.*, 224 Wis.2d 387, 591 N.W.2d 169 (App.1999) is distinguishable. In that

case, the court found coverage when leaky windows damaged the drapery and wallpaper of the completed building; thus, the damages extended beyond the scope of the contractor's original work.