AUTO-OWNERS INSURANCE COMPANY, APPELLEE, V.
HOME PRIDE COMPANIES, INC., APPELLANT, AND
APPLETREE APARTMENTS, INC., ET AL., APPELLEES.

684 N.W.2d 571

Filed August 6, 2004. No. S-03-352.

Andrew J. Wilson, of Walentine, O'Toole, McQuillan & Gordon, for appellant.

Curtis D. Ruwe and C.J. Gatz, of Gatz, Fitzgerald, Vetter & Temple, for appellee Auto-Owners Insurance Company.

Thomas M. Locher and Douglas W. Krenzer, of Locher, Cellilli, Pavelka & Dostal, L.L.C., and Roger W. Warren and Jeffrey C. Baker, of Sanders, Conkright & Warren, L.L.P., for appellees Certain Teed Corporation and G.S. Roofing Products Co.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Auto-Owners Insurance Company (Auto-Owners) instituted this declaratory judgment action to determine its obligations to its insured, Home Pride Companies, Inc. (Home Pride). The district court determined that the policy issued by Auto-Owners to Home Pride did not cover Home Pride's claim and granted summary judgment in favor of Auto-Owners. The main issue on appeal is whether a standard commercial general liability (CGL) insurance policy covers an insured contractor for the faulty workmanship of a subcontractor that it hired.

## FACTUAL AND PROCEDURAL BACKGROUND

Because this action is based upon an underlying action filed in April 2002, we digress to trace the history of the original action. Appletree Apartments, Inc. (Appletree), is a wholly owned subsidiary of J.A. Peterson Enterprises, Inc. (Peterson). Appletree and Peterson entered into a contract with JT Builders, Inc., to install new shingles on a number of Appletree's apartment buildings. Thereafter, JT Builders subcontracted with Craig Industries, Inc., to do the work. After becoming dissatisfied with Craig Industries' work, JT Builders terminated its contract with Craig Industries and subcontracted the work to Home Pride. Home Pride then entered into a subcontract with Ron

Hansen, doing business as Ron Hansen Construction, to install the shingles.

Sometime in 1996, Ron Hansen Construction completed the project. Soon thereafter, Appletree began to notice problems with the roof. Appletree notified Home Pride of the problems, and after receiving what it believed to be an unsatisfactory response, Appletree and Peterson filed suit against Home Pride, JT Builders, and Craig Industries. In their petition, Appletree and Peterson claimed that the aforementioned parties failed to install the shingles in a workmanlike manner and that such faulty workmanship caused substantial and material damage to the roof structures and buildings. Appletree and Peterson also alleged that the shingles were defective and included in the action the manufacturer of the shingles, Certain Teed Corporation, and G.S. Roofing Products Co., a company that merged with Certain Teed Corporation after Appletree purchased the shingles.

After the suit was filed, Home Pride made a claim to its insurer, Auto-Owners, for coverage under its CGL policy. Pursuant to a reservation of rights, Auto-Owners assumed the defense of Home Pride. Thereafter, Auto-Owners instituted this declaratory judgment action against Home Pride, Appletree, Peterson, JT Builders, Craig Industries, Certain Teed Corporation, G.S. Roofing Products Co., and Ron Hansen, doing business as Ron Hansen Construction. Essentially, Auto-Owners claimed that the insurance policy did not provide coverage because the faulty workmanship of a subcontractor is not an "occurrence" under a CGL policy.

Both Auto-Owners and Home Pride moved for summary judgment. The district court determined that any alleged property damage was not caused by an "occurrence" and granted summary judgment in favor of Auto-Owners. Home Pride filed a timely notice of appeal.

## ASSIGNMENT OF ERROR

Home Pride assigns that the district court erred in determining that its CGL policy did not provide coverage.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine

issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Keys v. Guthmann*, 267 Neb. 649, 676 N.W.2d 354 (2004). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

Broadly speaking, this appeal requires us to determine whether damage caused by faulty workmanship is covered under a standard CGL insurance policy. Although this issue has been frequently examined by a number of courts, it is a matter of first impression in Nebraska.

██ The meaning of an insurance policy is a question of law, in connection with which an appellate court has an obligation to reach its own conclusions independently of the determination made by the lower court. *Poulton v. State Farm Fire & Cas. Cos.*, 267 Neb. 569, 675 N.W.2d 665 (2004). In construing insurance policy provisions, a court must determine from the clear language of the policy whether the insurer in fact insured against the risk involved. *Id.* In an appellate review of an insurance policy, the court construes the policy as any other contract to give effect to the parties' intentions at the time the writing was made. Where the terms of a contract are clear, they are to be accorded their plain and ordinary meaning. *Id.*

As relevant here, Home Pride's policy states:

**SECTION I—COVERAGES**
**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1. Insuring Agreement.**
**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .

. . . .

**b.** This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . . .

. . . .

**2. Exclusions.**

This insurance does not apply to:

. . . .

**1.** "Property damage" to "your work" arising out of it or any part of it and including in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

As an initial matter, we note that Home Pride appears to argue that coverage exists because the policy contains a subcontractor exception to the "your work," or "1," exclusion found in section 2. We disagree. The provision Home Pride relies on is merely an exception to an exclusion and, therefore, incapable of providing coverage. See, *Auto Owners Ins. Co. v. Travelers Cas. & Surety*, 227 F. Supp. 2d 1248 (M.D. Fla. 2002); *Hawkeye-Security Ins. Co. v. Davis*, 6 S.W.3d 419 (Mo. App. 1999); *Lassiter Const. v. American States Ins.*, 699 So. 2d 768 (Fla. App. 1997). Stated otherwise, the exception contained within exclusion "1" is irrelevant until two conditions precedent are met: (1) There is an initial grant of coverage and (2) exclusion "1" operates to preclude coverage. See, *L-J, Inc. v. Bituminous Fire and Marine*, 350 S.C. 549, 567 S.E.2d 489 (S.C. App. 2002); *Kalchthaler v. Keller Const. Co.*, 224 Wis. 2d 387, 591 N.W.2d 169 (Wis. App. 1999). If, and only if, these two conditions are met may the subcontractor exception to the exclusion be applicable.

In order to determine if coverage exists, we must first determine if there was "property damage" caused by an "occurrence." On both accounts, Auto-Owners contends that there is not. As to the former, the policy states that "property damage" is "[p]hysical injury to tangible property, including all resulting loss of use of that property" as well as "[l]oss of use of tangible property that is not physically injured." In their amended petition, Appletree and Peterson alleged that shingles were breaking apart and falling off the roofs at Appletree's apartments, resulting in

substantial and material damage to the roof structures and buildings. Such allegations state a cause for physical injury to tangible property and, therefore, "property damage" under the policy. See, *American Family Mut. v. American Girl, Inc.*, 268 Wis. 2d 16, 673 N.W.2d 65 (2004); *Kalchthaler v. Keller Const. Co., supra*; *Maryland Cas. Co. v. Reeder*, 221 Cal. App. 3d 961, 270 Cal. Rptr. 719 (1990).

At the core of Auto-Owners' appellate argument is its contention that faulty workmanship does not constitute an "occurrence" under the policy. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." While the term "accident" is not defined in the policy, we have previously stated that "an accident within the meaning of liability insurance contracts includes any event which takes place without the foresight or expectation of the person acted upon or affected thereby." *Farr v. Designer Phosphate & Premix Internat.*, 253 Neb. 201, 206, 570 N.W.2d 320, 325 (1997). See, also, *Sullivan v. Great Plains Ins. Co.*, 210 Neb. 846, 851, 317 N.W.2d 375, 379 (1982) (accident is " 'an unexpected happening without intention or design,' " quoting 45 C.J.S. *Insurance* § 829 (1946)); *City of Kimball v. St. Paul Fire & Marine Ins. Co.*, 190 Neb. 152, 154, 206 N.W.2d 632, 634 (1973) ("[t]he word 'accident' as used in liability insurance is a more comprehensive term than 'negligence' and in its common signification the word means an unexpected happening without intention").

Whether faulty workmanship fits within the aforementioned definition of accident is a difficult question, and courts have answered it in a variety of ways. For example, a relatively small number of courts have determined that the damage that occurs as a result of faulty or negligent workmanship constitutes an accident, so long as the insured did not intend for the damage to occur. See, *Fidelity & Deposit of Maryland v. Hartford Cas.*, 189 F. Supp. 2d 1212 (D. Kan. 2002); *Joe Banks Drywall v. Transcont. Ins. Co.*, 753 So. 2d 980 (La. App. 2000); *Erie Ins. Exchange v. Colony Dev. Corp.*, 136 Ohio App. 3d 406, 736 N.E.2d 941 (1999).

However, the majority of courts have determined that faulty workmanship is not an accident and, therefore, not an occurrence. See, e.g., *Lenning v. Commercial Union Ins. Co.*, 260 F.3d

574, 583 (6th Cir. 2001) ("there is no 'occurrence' to the extent [a] complaint alleges property damage arising out of defective or faulty craftsmanship"); *J.Z.G. Resources, Inc. v. King*, 987 F.2d 98 (2d Cir. 1993) (defective workmanship, standing alone, is not occurrence); *Pursell Const. v. Hawkeye-Security Ins.*, 596 N.W.2d 67, 71 (Iowa 1999) ("defective workmanship standing alone, that is, resulting in damages only to the work product itself, is not an occurrence under a CGL policy"); *L-J, Inc. v. Bituminous Fire and Marine*, 350 S.C. 549, 556, 567 S.E.2d 489, 493 (S.C. App. 2002) ("faulty workmanship, standing alone, does not constitute an 'accident' and cannot therefore be an 'occurrence'"); *State Farm Fire and Cas. Co. v. Tillerson*, 334 Ill. App. 3d 404, 409, 777 N.E.2d 986, 991, 268 Ill. Dec. 63, 68 (2002) ("[w]here the defect is no more than the natural and ordinary consequences of faulty workmanship, it is not caused by an accident"); *Radenbaugh v. Farm Bureau*, 240 Mich. App. 134, 610 N.W.2d 272 (2000); *Heile v. Herrmann*, 136 Ohio App. 3d 351, 736 N.E.2d 566 (1999); *U.S. Fidelity & Guar. v. Advance Roofing*, 163 Ariz. 476, 788 P.2d 1227 (Ariz. App. 1989).

■ Although it is clear that faulty workmanship, standing alone, is not covered under a standard CGL policy, it is important to realize that there are two different justifications for this rule. On the one hand, the rule has been justified on public policy grounds, primarily on the long-founded notion that the cost to repair and replace the damages caused by faulty workmanship is a business risk not covered under a CGL policy. See, *Nas Sur. Group v. Precision Wood Products, Inc.*, 271 F. Supp. 2d 776 (M.D.N.C. 2003); *LaMarche v. Shelby Mut. Ins. Co.*, 390 So. 2d 325 (Fla. 1980). Today, the business risk rule is part of standard CGL policies in the form of "your work" exceptions to coverage. Therefore, the business risk rule does not serve as an initial bar to coverage, but, rather, as a potential exclusion, via the "your work" exclusions, if an initial grant of coverage is found. See, *American Family Mut. v. American Girl, Inc.*, 268 Wis. 2d 16, 673 N.W.2d 65 (2004); *Erie Ins. Exchange v. Colony Dev. Corp., supra.*

On the other hand, rather than relying on the business risk rule, a majority of courts have determined that faulty workmanship, standing alone, is not covered under a CGL policy because,

as a matter of policy interpretation, "[t]he fortuity implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship." *McAllister v. Peerless Ins. Co.*, 124 N.H. 676, 680, 474 A.2d 1033, 1036 (1984). See, also, *J.Z.G. Resources, Inc. v. King, supra*; *Pursell Const. v. Hawkeye-Security Ins., supra*; *Heile v. Herrmann, supra*; *R.N. Thompson & Associates v. Monroe Guar.*, 686 N.E.2d 160 (Ind. App. 1997); *Indiana Ins. Co. v. Hydra Corp.*, 245 Ill. App. 3d 926, 615 N.E.2d 70 (1993); *U.S. Fidelity & Guar. v. Advance Roofing, supra*. Because the majority rule is based on an actual interpretation of policy language, as opposed to a mere exposition of policy, and comports with our prior definitions of the term "accident," we believe that it represents the better rule. See *id.* Consequently, we conclude that faulty workmanship, standing alone, is not covered under a standard CGL policy because it is not a fortuitous event.

■ Important here, although faulty workmanship, *standing alone*, is not an occurrence under a CGL policy, an accident caused by faulty workmanship is a covered occurrence. See, e.g., *J.Z.G. Resources, Inc. v. King*, 987 F.2d 98 (2d Cir. 1993); *Wm. C. Vick Const. Co. v. Pennsylvania Nat. Mut.*, 52 F. Supp. 2d 569 (E.D.N.C. 1999); *Pursell Const. v. Hawkeye-Security Ins.*, 596 N.W.2d 67 (Iowa 1999); *High Country Assocs. v. N.H. Ins. Co.*, 139 N.H. 39, 648 A.2d 474 (1994); *L-J, Inc. v. Bituminous Fire and Marine*, 350 S.C. 549, 567 S.E.2d 489 (S.C. App. 2002); *Radenbaugh v. Farm Bureau*, 240 Mich. App. 134, 610 N.W.2d 272 (2000); *Heile v. Herrmann*, 136 Ohio. App. 3d 351, 736 N.E.2d 566 (1999); *Kalchthaler v. Keller Const. Co.*, 224 Wis. 2d 387, 591 N.W.2d 169 (Wis. App. 1999); *Auto Owners Ins. v. Tripp Const., Inc.*, 737 So. 2d 600 (Fla. App. 1999); *Pekin Ins. v. Richard Marker Associates*, 289 Ill. App. 3d 819, 682 N.E.2d 362, 224 Ill. Dec. 801 (1997); *U.S. Fidelity & Guar. v. Advance Roofing*, 163 Ariz. 476, 788 P.2d 1227 (Ariz. App. 1989). Stated otherwise, although a standard CGL policy does not provide coverage for faulty workmanship that damages only the resulting work product, if faulty workmanship causes bodily injury or property damage to something other than the insured's work product, an unintended and unexpected event has occurred, and coverage exists. See, *High Country Assocs. v. N.H. Ins. Co., supra*; *L-J, Inc.*

*v. Bituminous Fire and Marine, supra; Radenbaugh v. Farm Bureau, supra; Kalchthaler v. Keller Const. Co., supra.*

For example, in *L-J, Inc. v. Bituminous Fire and Marine, supra*, a subcontractor was hired to clear, grub, grade, and construct the subbase for a road construction project. The subcontractor failed to remove a number of tree stumps in the roadbed and moisture seeped into the road base, deteriorating the road. After stating the general rule that "faulty workmanship, standing alone, does not constitute an 'accident' and cannot therefore be an 'occurrence,'" the court noted faulty workmanship that causes an accident is covered under a standard CGL policy. *Id.* at 556, 567 S.E.2d at 493.

> [H]ad the pavement not failed and [the developer] brought an action to recover the cost of removing the tree stumps from the roadbed, the defective work, standing alone, would not have been "property damage" or an "occurrence" under the policy. The damages, however, extend beyond the cost of removing the tree stumps because the failure to properly compact the roadbed led to property damage, namely, the failure of the road surfaces. These remote damages were an "accident" not expected or intended by the insured.

*Id.* at 556-57, 567 S.E.2d at 493.

Similarly, in *High Country Assocs. v. N.H. Ins. Co., supra*, a homeowners' association sued the builders of a number of condominiums for negligently constructing the condominiums' exterior walls. Initially, the court noted the rule that claims for faulty workmanship, standing alone, do not constitute an "occurrence" within the meaning of a CGL policy. *Id.* The court then went on to point out that the homeowners' association's petition not only requested compensation to repair and replace the poorly constructed exterior walls, but also requested compensation for the water damage that allegedly occurred as a result of the builders' faulty workmanship, including decay of the sheathing, harm to the structural studding, loss of structural integrity, and damage to the vertical siding. *Id.* Determining that these consequential damages constituted accidental damage to property other than the insured's own work product, the court held that the homeowners' association had made out a claim for property damage caused by an occurrence and that therefore, the

insurer was obligated to provide coverage for the insured builder. *Id.*

In the instant case, Appletree and Peterson alleged that JT Builders, through its subcontractors Craig Industries and Home Pride (hereinafter contractors), negligently installed shingles on a number of apartments, which caused the shingles to fall off. Additionally, the amended petition alleged that as a consequence of the faulty work, the roof structures and buildings have experienced substantial damage. This latter allegation represents an unintended and unexpected consequence of the contractors' faulty workmanship and goes beyond damages to the contractors' own work product. Therefore, the amended petition properly alleged an occurrence within the meaning of the insurance policy.

■ Because Appletree and Peterson's amended petition alleges property damage caused by an occurrence, the policy provides an initial grant of coverage. Therefore, we now turn to the policy exclusions. Under established law, the burden to prove that an exclusionary clause applies rests upon the insurer. See *Farmers Mut. Ins. Co. v. Kment*, 265 Neb. 655, 658 N.W.2d 662 (2003). On appeal, Auto-Owners contends that coverage is excluded by exclusions "n(2)" and "n(3)." These exclusions state:

**SECTION I—COVERAGES**
**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

. . . .

**2. Exclusions.**
This insurance does not apply to:

. . . .

**n.** Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

. . . .

**(2)** "Your work"; or
**(3)** "Impaired property";
if such . . . work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

 Generally speaking, the "your work" exclusions, of which "n(2)" is one, operate to prevent liability policies from insuring against an insured's own faulty workmanship, which is a normal risk associated with operating a business. See, *American Family Mut. v. American Girl, Inc.*, 268 Wis. 2d 16, 673 N.W.2d 65 (2004); *Employers Mut. Cas. Co. v. Pires*, 723 A.2d 295 (R.I. 1999); *Knutson Const. Co. v. St. Paul Fire & Marine Ins.*, 396 N.W.2d 229 (Minn. 1986); *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 405 A.2d 788 (1979); *Sapp v. State Farm Fire & Cas. Co.*, 226 Ga. App. 200, 486 S.E.2d 71 (1997). Essentially, the rationale behind the "your work" exclusions is that they discourage careless work by making contractors pay for losses caused by their own defective work, while preventing liability insurance from becoming a performance bond. See, *Fireguard Sprinkler Systems v. Scottsdale Ins.*, 864 F.2d 648 (9th Cir. 1988); *Knutson Const. v. St. Paul Fire & Marine Ins., supra*; *Weedo v. Stone-E-Brick, Inc., supra*; *U.S. Fidelity & Guar. v. Advance Roofing*, 163 Ariz. 476, 788 P.2d 1227 (Ariz. App. 1989); *C. D. Walters Const. Co. v. Fireman's Ins. Co.*, 281 S.C. 593, 316 S.E.2d 709 (S.C. App. 1984).

In the instant case, exclusion "n(2)" does not serve to exclude Appletree and Peterson's damage claim because their claim extends beyond the cost to simply repair and replace the contractors' work, i.e., to reshingle the roofs. As previously noted, Appletree and Peterson alleged that the contractors' faulty workmanship resulted in substantial damage to the roof structures and buildings. Therefore, their claimed damages to the roof structure and buildings fall outside of the exclusion. See, *Standard Fire Ins. Co. v. Chester O'Donley*, 972 S.W.2d 1 (Tenn. App. 1998) (noting that "your work" exclusion does not apply to claims involving losses resulting from failure of insured's work); *Glens Falls Ins. v. Donmac Golf Shaping*, 203 Ga. App. 508, 417 S.E.2d 197 (1992).

Similarly, in regard to exclusion "n(3)," the policy states that property is not "impaired" unless it is capable of being restored by the "repair, replacement, adjustment or removal of . . . 'your work'; or . . . [y]our fulfilling the terms of the contract or agreement." Therefore, because damage to the roof structures and buildings cannot be repaired or restored by simply reshingling

the apartment roofs, they are not "impaired property" within the meaning of exclusion "n(3)." See, *Federated Mut. Ins. Co. v. Grapevine Excavation*, 197 F.3d 720 (5th Cir. 1999). Consequently, exclusion "n(3)" is inapplicable.

## CONCLUSION

For the foregoing reasons, we conclude that Auto-Owners has a duty to defend Home Pride, and to the extent that Home Pride may be found liable for the resulting damage to the roof structures and the buildings, Auto-Owners is obligated to provide coverage. The district court erred in granting summary judgment in favor of Auto-Owners and in not granting summary judgment in favor of Home Pride. The judgment entered in favor of Auto-Owners and against Home Pride is reversed, and the district court is directed to enter judgment in favor of Home Pride consistent with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.