ATTORNEYS FOR APPELLANT
David F. McNamar
McNamar & Associates, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
CONTINENTAL CASUALTY COMPANY
Mary K. Reeder
Riley Bennett & Egloff, LLP
Indianapolis, Indiana

OF COUNSEL
Joseph Borders
Peter G. Daniels
Walker Wilcox Matousek LLP
Chicago, Illinois

ATTORNEYS FOR APPELLEE
INDIANA INSURANCE COMPANY
Joseph Dietz
Meils Thompson Dietz & Berish
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
MJ INSURANCE, INC.
Philip E. Kalamaros
Hunt Suedhoff Kalamaros LLP
St. Joseph, Michigan

FILED
Sep 30 2010, 1:30 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S02-1001-CV-32

SHEEHAN CONSTRUCTION COMPANY, INC.,
VINCENT B. ALIG, M.D. AND MARY JEAN ALIG
INDIVIDUALLY, CO-TRUSTEES OF THE MARY
JEAN ALIG REVOCABLE TRUST, AND AS
REPRESENTATIVES OF A CLASS OF ALL
OTHERS SIMILARLY SITUATED,

*Appellants (Petitioners below),*

v.

CONTINENTAL CASUALTY COMPANY,
INDIANA INSURANCE COMPANY, AND
MJ INSURANCE, INC.,

*Appellees (Respondents below).*

Appeal from the Marion Superior Court,
Civil Div. F-12, No. 49F12-0702-PL-007751
The Honorable Michael D. Keele, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 49A02-0805-CV-420

**September 30, 2010**

**Rucker, Justice.**

Continental Casualty Company filed a declaratory judgment action to determine its obligation to its insured, Sheehan Construction Company. The trial court determined that the policy issued by Continental to Sheehan did not cover Sheehan's claim and granted summary judgment in favor of Continental. The main issue in this case is whether a standard commercial general liability ("CGL") insurance policy covers an insured contractor for the faulty workmanship of its subcontractor.

**Background**

Before discussing the issues at stake in this case, we provide some background information. CGL insurance policies are designed to protect an insured against certain losses arising out of business operations. Most CGL policies are written on standardized forms developed by an association of domestic property insurers known as the Insurance Services Office ("ISO").[1] Hartford Fire Ins. Co. v. California, 509 U.S. 764, 772 (1993). "[These] policies begin with a broad grant of coverage, which is then limited in scope by exclusions. Exceptions to exclusions narrow the scope of the exclusion and, as a consequence, add back coverage. However, it is the initial broad grant of coverage, not the exception to the exclusion, that ultimately creates (or does not create) the coverage sought." David Dekker, Douglas Green

---

[1] Continental's Commercial General Liability Coverage Form provides at the bottom of each page "Copyright, Insurance Services Office, Inc., 1997." See Appellee Continental's App. at 102-13. Indiana's two CGL policies relevant to this case also include this copyright notice, dated 1994 for one policy and 1997 for the other. See Appellee Indiana's App. at 125-47.

& Stephen Palley, <u>The Expansion of Insurance Coverage for Defective Construction</u>, 28 Constr. Law, Fall 2008, at 19, 20 .

The precursor of today's standard commercial liability insurance contracts was promulgated in 1940 and has since undergone five principal revisions, the most recent of which came into use in 1986. Prior to 1986, the ISO had not significantly revised its standard commercial general liability form since 1973. Ernest Martin, Jr., Daniel T. Mabery, Erika L. Blomquist & Jeffrey S. Lowenstein, <u>Insurance Coverage for the New Breed of Internet-Related Trademark Infringement Claims</u>, 54 S.M.U.L. Rev. 1973, 1987-88 (2001) ("ISO frequently makes minor revisions to its CGL form, but rarely undertakes a major, substantive overhaul. . . . The standard ISO form in existence before the 1986 revision was promulgated in 1973 . . . ."). "In the 1973 version of the [ISO's CGL policy form], the work performed exclusion precluded coverage for property damage to work performed by or *on behalf of* the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." <u>French v. Assurance Co. of Am.</u>, 448 F.3d 693, 700 (4th Cir. 2006) (internal citations and quotations omitted) (emphasis added); <u>see also</u> 9A Eric Mills Holmes, <u>Holmes' Appleman on Insurance 2d</u> § 132.9 at 152 (2002). The "on behalf of" language was interpreted to mean that no coverage existed for damage to a subcontractor's work or for damage to the insured's own work resulting from a subcontractor's work. <u>See</u> 9A Lee R. Russ, et al., <u>Couch on Insurance 3d</u> § 129:18 (2005); Holmes, <u>supra</u>, at 153.

Many contractors were dissatisfied with this state of affairs because more and more projects were being completed with the help of subcontractors. <u>See</u> Russ, et al., <u>supra</u>, § 129:18 ("Due to the increasing use of subcontractors on construction projects, many general contractors were not satisfied with the lack of coverage provided under [the 1973 ISO CGL] commercial general liability policies where the general contractor was not directly responsible for the defective work."). In response to this dissatisfaction, beginning in 1976 an insured under the 1973 ISO CGL policy form could pay a higher premium to obtain a broad form property damage endorsement (the BFPD Endorsement) which effectively eliminated the "on behalf of" language and excluded coverage only for property damage to work performed by the named insured. <u>Id.</u> Thus, liability coverage was extended to the insured's completed work when the damage arose out of work performed by a subcontractor. <u>Id.</u>.

In 1986, as part of a major revision, the subcontractor exception aspect of the BFPD Endorsement was added directly to the body of the ISO's CGL policy in the form of an express exception to the "Your Work" exclusion. Id.; Limbach Co. LLC v. Zurich Am. Ins. Co., 396 F.3d 358, 362-63 (4th Cir. 2005) (internal citations omitted). Thus, under the 1986 ISO CGL Policies, the "Your Work" exclusion specifically provides that it "does not apply if the damaged work or the work out of which the damage arises was performed on [the insured contractor's] behalf by a subcontractor." Appellants' App. at 245. Copyrighted in 1994 and 1997, see supra n.1, the CGL Polices at issue in this case post date the 1986 revisions and include a subcontractor exception to the "Your Work" exclusion. With this background in mind we proceed to the merits of the case before us.

## Facts and Procedural History

Because this action is based upon an underlying claim filed in November 2004, we begin by tracing the history of the original action. In April 2000 Vincent B. Alig and his wife Mary Jean Alig purchased a home in the Crystal Lake residential subdivision located in Marion County. Sheehan Construction Company was the general contractor on the project and was responsible for hiring subcontractors who actually built the houses. After experiencing water leaks in their home, the Aligs notified their homeowner's insurance carrier which in turn hired an engineering company to investigate. Among other things the investigation revealed leaking windows, fungus growth on the siding, decayed OSB sheathing, deteriorating and decaying floor joists, and water damage to the interior of the home including water stained carpeting. Appellee Continental's App. at 37, 38, 40. These problems were caused by the faulty workmanship of Sheehan's subcontractors which included lack of adequate flashing and quality caulking around the windows, lack of a weather resistant barrier behind the brick veneer to protect the wood components of the wall, improperly installed roofing shingles, improperly flashed or sealed openings for the chimney and vents, and inadequate ventilation in the crawl space. Id. at 74-76.

In November 2004, the Aligs filed a complaint in the Marion Circuit Court against Sheehan pursuant to Indiana Code sections 32-27-3-1 to 14 (concerning cause of action for construction defects). During the period in which the home was built Sheehan was insured under a CGL policy issued by Continental Insurance Company. Sheehan was also included as an additional named insured in a CGL policy issued by Indiana Insurance Company to Somerville

Construction – one of Sheehan's subcontractors. The policies provided coverage for the "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' . . . . caused by an 'occurrence' that takes place in the 'coverage territory'" during the policy period. Appellee Continental's App. at 102; Appellee Indiana's App. at 125, 139. As defined in the policies, an "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions," and "property damage" includes "[p]hysical injury to tangible property, including all resulting loss of use of that property." Appellee Continental's App. at 112, 113; Appellee Indiana's App. at 133-34, 146, 147. The coverage provisions were limited by numerous exclusions. Of particular relevance in this case is the exclusion, with its exception, that excludes coverage for damage to the insured's property and work:

> **2. Exclusions.**
>
> This insurance does not apply to:
> . . . .
> **l. Damage To Your Work**
>
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
>
> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

Appellee Continental's App. at 102, 105; Appellee Indiana's App. at 125, 128; 139, 142.

After the Aligs filed suit, Sheehan contacted Continental which agreed to represent Sheehan under a reservation of rights. When other homeowners in the subdivision began experiencing problems with their homes similar to those experienced by the Aligs, they sought to be joined as plaintiffs. Consequently counsel filed, and the trial court granted, a motion to convert the Aligs' complaint into a Class Action lawsuit. After the Class was certified the trial court ordered the parties into mediation. Continental participated therein and the mediation resulted in a settlement of approximately $2.8 million. Among other things the settlement provided that the Class would not pursue its claims against Sheehan. Instead, Sheehan assigned to the Class any rights it might have against Continental in addition to certain non-settling subcontractors and MJ Insurance – Sheehan's insurance broker.

5

Continental filed this declaratory judgment action in the Marion Superior Court seeking a declaration that it was not obligated to indemnify Sheehan. Sheehan and the Class filed an answer, counter-claim, and a third-party complaint against Indiana Insurance. Sheehan and the Class also filed a third party complaint against MJ insurance for negligent failure to procure insurance. All parties moved for summary judgment. The trial court determined the designated materials showed there was no "property damage other than to the structural components of the homes themselves." Appellants' App. at 27. Accordingly, the trial court reasoned, under the terms of the insurance policies there was no "occurrence" or "property damage," and thus granted summary judgment in favor of Continental and Indiana Insurance (collectively, "Insurers"). Id. at 27, 29. The trial court also granted summary judgment in favor of MJ Insurance on statute of limitations grounds. Sheehan and the Class (hereafter referred to collectively as "Sheehan") appealed and Indiana Insurance cross-appealed.[2] In a divided opinion the Court of Appeals affirmed the judgment of the trial court. See Sheehan Constr. Co. v. Continental Cas. Co., 908 N.E.2d 305 (Ind. Ct. App. 2009). The majority concluded among other things there was no property damage within the meaning of the Insurers' CGL policies because the damage to the homes "cannot be treated as distinct from the underlying faulty workmanship . . . ." Id. at 309. We granted transfer to explore this issue. We summarily affirm the portion of the Court of Appeals opinion affirming summary judgment in favor of MJ Insurance.

---

[2] Although the trial court entered summary judgment in favor of Indiana Insurance, it nonetheless cross appeals contending the trial court erred in failing to strike portions of an affidavit by Thomas Corridan – a witness on behalf of Sheehan with expertise in handling insurance claims. Indiana Insurance complains that the affidavit includes legal conclusions and opinions about Indiana law. Indiana Insurance does not say so in express terms, but we presume it is "[i]nvoking the rule that a reviewing court can affirm a trial court's grant of summary judgment on any theory the Trial Rule 56 materials support." See Estate of Mintz v. Conn. Gen. Life Ins. Co., 905 N.E.2d 994, 999 (Ind. 2009). We decline to address this issue for several reasons. First, Sheehan tendered the eight-page affidavit in support of its own motion for summary judgment, which the trial court denied. Second, although portions of the affidavit were inadmissible, other portions were not, and Indiana Insurance made no effort to identify precisely which portions it thought should be deleted. In fact at a hearing on the parties' motions for summary judgment, Indiana Insurance moved more broadly that "the affidavit of Mr. Corydon [sic] be stricken." Appellants' App. at 86. It was entitled to no such relief. Third, although the record does not reveal whether the trial court actually ruled on Indiana Insurance's motion to strike, nothing before us suggests the trial court considered the affidavit in its summary judgment ruling. Finally, even if the entire affidavit were stricken from the record, its absence would have no bearing on the outcome of this appeal.

6

**Standard of Review**

In the appellate review of a grant or denial of summary judgment, we apply the same standard as the trial court. Reeder v. Harper, 788 N.E.2d 1236, 1240 (Ind. 2003). Summary judgment "shall be rendered forthwith if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). During our review, all facts and reasonable inferences drawn from them are construed in favor of the non-moving party. Reeder, 788 N.E.2d at 1240.

**Discussion**

**I.**

Broadly speaking this appeal requires us to determine whether damage caused by faulty workmanship is covered under a standard CGL policy. This issue has been frequently litigated in a number of jurisdictions. Our Court last broached the subject in Indiana Insurance Co. v. DeZutti, 408 N.E.2d 1275 (Ind. 1980). We examine DeZutti today because language appearing in that decision has provided the bases for at least two Court of Appeals opinions declaring in part that the risk intended to be insured by a CGL policy is "the possibility that the goods, products, or work of the insured, once relinquished or completed, will cause bodily injury or damage to property *other than* to the product or completed work itself." Amerisure, Inc. v. Wurster Constr. Co., 818 N.E.2d 998, 1003 (Ind. Ct. App. 2004) (quoting R.N. Thompson & Assocs., Inc., v. Monroe Guar. Ins. Co., 686 N.E.2d 160, 162 (Ind. Ct. App. 1997) (citing DeZutti, 408 N.E.2d at 1279)) (emphasis in original). Amerisure and R.N. Thompson provide the primary authority for the opinion of the Court of Appeals in this case.[3]

In DeZutti the homeowners sued the general contractor for damages allegedly caused by the contractor's faulty construction of their house, namely, serious cracking of the mortar and bricks. The contractor in turn called upon his insurance carrier to provide a defense pursuant to the terms of its CGL policy. The insurer declined and filed a declaratory judgment action. The trial court determined that the insurer was obligated to provide a defense and the Court of

---

[3] For the same proposition see also T.R. Bulger, Inc. v. Ind. Ins. Co., 901 N.E.2d 1110, 1115 (Ind. Ct. App. 2009); Jim Barna Log Sys. Midwest, Inc. v. Gen. Cas. Ins. Co. of Wis., 791 N.E.2d 816, 824 (Ind. Ct. App. 2003); Schultz v. Erie Ins. Group, 754 N.E.2d 971, 975 (Ind. Ct. App. 2001).

Appeals affirmed. On transfer this Court reversed holding that the CGL policy did not provide coverage to correct, repair or replace the contractor's own poor workmanship. In doing so the Court quoted with approval a law review article that declared in part:

> The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property *other than to the product or completed work itself*, and for which the insured may be found liable. . . . The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.

DeZutti, 408 N.E.2d at 1279 (quoting Roger C. Henderson, Insurance Protection for Products Liability and Completed Operations - What Every Lawyer Should Know, 50 Neb. L. Rev. 415, 441 (1971)) (emphasis added). The Court continued,

> The same neglectful craftsmanship may cause both a business expense of repair and a loss represented by damage to persons and property other than the insured's own product or work. If, as in this case, the damage is confined to the insured's own product or work, it is a business risk and expense not intended to be covered under the policy and is excluded by [certain] exceptions. . . . The policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident.

Id. at 1279 (internal citation and quotation omitted). The Court of Appeals relied upon the foregoing language to conclude in Amerisure, R.N. Thompson, and the instant case that the Insurers' CGL polices do not cover damage to the Class members' homes.

We make the following observations. In DeZutti the Court was addressing the impact on the insurer's duty to defend not based on the insuring provisions or the definition of "property damage" or "occurrence" but rather because faulty workmanship by a contractor was specifically excluded based on the clear and unambiguous "business risk" exclusionary clauses. The policy at issue in DeZutti had several exclusionary clauses one of which provided that the policy did not apply to "property damage to the named insured's products arising out of such products or any part of such products." Id. at 1277. Another exclusionary provision provided that the policy did not apply to "property damage to work performed by or on behalf of the

8

named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith . . . ." Id. Examining these provisions we concluded, "[t]hese provisions clearly exclude insurance coverage for damages to the insured's product or work when such damages are confined *to* the product or work and caused *by* the product or work, or *any part thereof.* It is only damage to *other* property arising out of the insured's product or work which would be covered." Id. at 1280 (emphases in original).

In essence DeZutti relied on the exclusions to determine that no coverage existed in that case. There was no intent to suggest that the broad language regarding the purpose of CGL polices stand for the proposition that faulty workmanship that damages the contractor's own work can never constitute a covered "occurrence." Further, the CGL policy at issue in DeZutti predated the 1986 ISO revisions. Indeed we agree with the observations of the Wisconsin Supreme Court that "CGL policies generally do not cover contract claims arising out of the insured's defective work or product, but this is by operation of the CGL's business risk exclusions, not because a loss actionable only in contract can never be the result of an 'occurrence' within the meaning of the CGL's initial grant of coverage." Am. Family Mut. Ins. Co. v. Am. Girl, Inc., 673 N.W.2d 65, 76 (Wis. 2004); see also Travelers Indem. Co. of Am. v. Moore & Assocs., Inc., 216 S.W.3d 302, 307 (Tenn. 2007) (declaring that "[r]eliance upon a CGL's 'exclusions' to determine the meaning of 'occurrence' has resulted in regrettably overbroad generalizations concerning CGLs" (internal citation and quotation omitted)).

## II.

The Insurers' CGL policies insure against liability for "property damage" caused by an "occurrence." Appellee Continental's App. at 102; Appellee Indiana's App. at 125, 139. The policies follow the widely used CGL form defining "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Appellee Continental's App. at 112; Appellee Indiana's App. at 133, 146. Whether faulty workmanship fits within the insurance policy's definition of "occurrence" under standard CGL polices has been the subject of much debate and litigation throughout the country and the jurisdictions are divided on the issue. Some states have held that faulty workmanship or improper construction is

9

not an "occurrence" because it does not constitute an "accident."[4]  Other states have found improper or faulty construction to be an "accident" and therefore an "occurrence" where the resulting damage occurs without the insured's expectation or foresight.[5]  Many of these cited

[4] See, e.g., U.S. Fid. & Guar. v. Advance Roofing & Supply Co., 788 P.2d 1227, 1233 (Ariz. Ct. App. 1989) ("mere faulty workmanship, standing alone, cannot constitute an occurrence as defined in the policy, nor would the cost of repairing the defect constitute property damages"); Gen. Sec. Idem. Co. of Ariz. v. Mountain States Mut. Cas. Co., 205 P.3d 529, 535 (Colo. Ct. App. 2009) ("claims of poor workmanship, standing alone, are not occurrences that trigger coverage under CGL policies similar to those at issue here"); State Farm Fire and Cas. Co. v. Tillerson, 777 N.E.2d 986, 991 (Ill. Ct. App. 2002) ("[w]here the defect is no more than the natural and ordinary consequences of faulty workmanship, it is not caused by an accident"); Pursell Constr. v. Hawkeye-Security Ins. Co., 596 N.W.2d 67, 71 (Iowa 1999) ("defective workmanship standing alone, that is, resulting in damages only to the work product itself, is not an occurrence under a CGL policy"); Auto-Owners Ins. Co. v. Home Pride Cos., 684 N.W.2d 571, 578 (Neb. 2004); ("although a standard CGL policy does not provide coverage for faulty workmanship that damages only the resulting work product, if faulty workmanship causes bodily injury or property damage to something other than the insured's work product, an unintended and unexpected event has occurred, and coverage exists"); Heille v. Herrmann, 736 N.E.2d 566, 568 (Ohio Ct. App. 1999) (holding that faulty workmanship is not an accident and therefore not an occurrence); Oak Crest Constr. Co. v. Austin Mut. Ins. Co., 998 P.2d 1254, 1257 (Or. 2000) ("there can be no 'accident' within the meaning of a commercial liability policy, when the resulting damage is merely a breach of contract"); Kvaerner Metals Div. of Kvaerner U.S., Inc. v Commercial Union Ins. Co., 908 A.2d 888, 899 (Pa. 2006) (holding that "the definition of 'accident' required to establish an 'occurrence' under the policies cannot be satisfied by claims based upon faulty workmanship); L-J, Inc. v. Bituminous Fire & Marine Ins. Co., 621 S.E.2d 33, 37 (S.C. 2005) (finding that "faulty workmanship does not constitute an 'occurrence'"); Corder v. William W. Smith Excavating Co., 556 S.E.2d 77, 83 (W. Va. 2001) ("commercial general liability policies are not designed to cover poor workmanship"); Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 948 (9th Cir. 2004) (applying Hawaii law and declaring "General liability policies . . . are not designed to provide contractors and developers with coverage against claims their work is inferior or defective."); Lenning v. Commercial Union Ins. Co., 260 F.3d 574, 583 (6th Cir. 2001) (applying Kentucky law and declaring "there is no 'occurrence' to the extent [a] complaint alleges property damage arising out of defective or faulty craftsmanship"); J.Z.G. Resources, Inc. v King, 987 F.2d 98 (2d Cir. 1993) (applying New York law for the proposition that defective workmanship, standing alone, is not an occurrence).

[5] See, e.g., Fejes v. Alaska Ins. Co., 984 P.2d 519, 523 (Alaska 1999) (standing for the general proposition that improper or faulty workmanship constitutes an accident); Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co., 137 P.3d 486, 493 (Kan. 2006) (agreeing that the "damage occurring as a result of faulty or negligent workmanship constitutes an occurrence as long as the insured did not intend for the damage to occur"); Joe Banks Drywall & Acoustics, Inc. v. Transcontinental Ins. Co., 753 So. 2d 980 (La. Ct. App. 2000) (standing for the general proposition that improper or faulty workmanship constitutes an occurrence within the meaning of a general commercial liability policy); Architex Ass'n, Inc., v. Scottsdale Ins. Co., 27 So. 3d 1148, 1162 (Miss. 2010) (concluding that "the term 'occurrence' cannot be construed in such a manner as to preclude coverage for unexpected or unintended 'property damage' resulting from negligent acts or conduct of a subcontractor, unless otherwise excluded or the insured breaches its duties after loss"); High Country Assoc. v. N.H. Ins. Co., 648 A.2d 474, 478 (N.H. 1994) (property damage to condominium units caused by defective workmanship is an "occurrence" within the meaning of CGL policy); Erie Ins. Exchange v. Colony Dev. Corp., 736 N.E.2d 941, 947 (Ohio Ct. App. 1999) (property damage caused by contractor's negligence in constructing and designing a condominium complex "reasonably fall[s] within the policy's definition of property damage caused by an occurrence, –

cases are discussed in numerous articles advancing both sides of the issue. Compare, e.g., Clifford J. Shapiro, Point/Counterpoint: Inadvertent Construction Defects Are an "Occurrence" under CGL Policies, 22 Constr. Law., Spring 2002, at 13, 44 ("The better-reasoned decisions give effect to the actual intent of CGL insurance by holding that construction-defect claims allege an 'occurrence' . . . ."), with Linda B. Foster, Point/Counterpoint: No Coverage Under the CGL Policy for Standard Construction Defect Claims, 22 Constr. Law., Spring 2002, at 18, 47 ("When the proper analysis is done – starting with the insuring agreement – the correct conclusion is reached. There is no coverage for standard construction defect claims for repair and replacement of defective work.").

At least one court has observed that there appear to be two different rationales for the proposition that faulty workmanship is not covered under a standard CGL policy. On the one hand the rule has been justified on public policy grounds; namely, the cost to repair and replace the damages caused by faulty workmanship is a business risk not covered under a CGL policy. Auto-Owners Ins. Co. v. Home Pride Cos., 684 N.W.2d 571, 577 (Neb. 2004); see also Aetna Life & Cas. v. Patrick Indus. Inc., 645 N.E.2d 656, 662 (Ind. Ct. App. 1995); Weedo v. Stone-E-Brick, Inc., 405 A.2d 788, 791 (N.J. 1979). However, the business risk rule has been a part of standard CGL policies since at least 1986 in the form of "your work" exceptions to coverage. We therefore do not interpret the business risk rule as an initial bar to coverage, but rather we view it as potentially excluding certain events from coverage under the "your work" exclusion, where the policy is found to grant coverage initially. On the other hand a competing rationale

---

i.e., an accident"); Travelers Idem. Co. v. Moore & Assocs. Inc., 216 S.W.3d 302 (Tenn. 2007) (defective installation of windows causing water penetration "constitute[s] 'property damage' for purposes of the CGL"); Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 9 (Tex. 2007) (Damage to the insured's work as well as damage to a third party's property can result from an occurrence as defined in commercial general liability policy; no basis exists in the definition of "occurrence" to distinguish between the two.); Am. Family Mut. Ins. Co., 673 N.W.2d at 70 (Excessive settlement of soil after building was completed caused the building's foundation to sink. This caused the rest of the structure to buckle and crack. Held: There was "'property damage' caused by an 'occurrence' within the meaning of the CGL policies' general grant of coverage."); French v. Assurance Co. of Am., 448 F.3d 693, 706 (4th Cir. 2006) (applying Maryland law and holding that a standard 1986 commercial general liability policy form "provides liability coverage for the cost to remedy unexpected and unintended property damage to the contractor's otherwise nondefective work-product caused by the subcontractor's defective workmanship"); Great Am. Ins. Co. v. Woodside Homes Corp., 448 F. Supp. 2d 1275, 1283 (D. Utah 2006) (applying Utah law and declaring, "Certainly, different jurisdictions have approached and answered the question presented in this case in various ways. But the better-reasoned approach, and the approach that is most consistent with Utah law, views faulty subcontractor work as an occurrence from the standpoint of the insured.").

supporting the determination that faulty workmanship is not covered under a CGL policy is that as a matter of contract interpretation, "'[t]he fortuity implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship.'" Auto-Owners Ins. Co., 684 N.W.2d at 577 (quoting McAllister v. Peerless Ins. Co., 474 A.2d 1033, 1036 (N.H. 1984)). We find however that this rationale provides little guidance and is unhelpful to our analysis. Rather, we align ourselves with those jurisdictions adopting the view that improper or faulty workmanship does constitute an accident so long as the resulting damage is an event that occurs without expectation or foresight. As explained in more detail below this rationale is consistent with this jurisdiction's definition of "accident" as contained in standard CGL policies.

**III.**

Insurance policies are contracts that are subject to the same rules of construction as are other contracts. Eli Lilly & Co. v. Home Ins. Co., 482 N.E.2d 467, 470 (Ind. 1985). When the language of an insurance contract is clear and unambiguous, we will assign to the language its plain and ordinary meaning. Id. An insurance policy that is unambiguous must be enforced according to its terms, even those terms that limit an insurer's liability. Ramirez v. Am. Family Mut. Ins. Co., 652 N.E.2d 511, 514 (Ind. Ct. App. 1995). Thus, we may not extend insurance coverage beyond that provided by the unambiguous language in the contract. Shelter Ins. Co. v. Woolems, 759 N.E.2d 1151, 1155 (Ind. Ct. App. 2001), trans. denied. Also, insurers have the right to limit their coverage of risks and, therefore, their liability by imposing exceptions, conditions, and exclusions. Allstate Ins. Co. v. Boles, 481 N.E.2d 1096, 1098 (Ind. 1985).

As indicated earlier Insurers' CGL policies insure against liability for "property damage" caused by an "occurrence." In turn the policies define "occurrence" as "an accident, including continuous exposure to substantially the same general harmful conditions." The term "accident" is not defined in the policies. However, this Court has defined accident to mean "an unexpected happening without an intention or design." Tri-Etch, Inc., v. Cincinnati Ins. Co., 909 N.E.2d 997, 1002 (Ind. 2009) (quoting Auto-Owners Ins. Co. v. Harvey, 842 N.E.2d 1279, 1283 (Ind. 2006)). Implicit in the meaning of "accident" is the lack of intentionality. Id. The question presented is whether faulty workmanship is an accident within the meaning of a standard CGL policy. In our view the answer depends on the facts of the case. For example, faulty

workmanship that is intentional from the viewpoint of the insured cannot be an "accident" or an "occurrence." See Lamar Homes, 242 S.W.3d at 8-9. On the other hand if the faulty workmanship is "unexpected" and "without intention or design" and thus not foreseeable from the viewpoint of the insured, then it is an accident within the meaning of a CGL policy. The following example illustrates the point.

> [I]f a contractor improperly installs a shingle that later falls and hits a passerby, this event is unforeseeable and is an "occurrence" or "accident." . . . A shingle falling and injuring a person is a natural consequence of an improperly installed shingle just as water damage is a natural consequence of an improperly installed window. If we assume that either the shingle or the window installation will be completed negligently, it is foreseeable that damages will result. If, however, we assume that the installation of both the shingle and the window will be completed properly, then neither the falling shingle nor the water penetration is foreseeable and both events are "accidents."

Travelers Indem., 216 S.W.3d at 309. As applied to the case before us, if the faulty workmanship was the product of unintentional conduct then we start with the assumption, from Sheehan's viewpoint, that the work on the Class members' homes would be completed properly. The resulting damage would therefore be unforeseeable and constitute an "accident" and therefore an "occurrence" within the meaning of the Insurers' CGL policies.[6]

---

[6] We disagree with Justice Sullivan's proposition that a performance bond, as opposed to a CGL policy, is the appropriate avenue for insuring against damages for defective workmanship. This issue has also generated a considerable amount of discussion and debate. As one court has observed:

> [A]lthough defective construction may constitute an "occurrence," the insurer indemnifies the insured only for resulting "property damage" arising after the project is completed. In contrast, a performance bond is broader than a CGL policy in that it guarantees the completion of a construction contract upon the default of the general contractor. Therefore, a variety of deficiencies that do not constitute "property damage" may be covered by a performance bond, and not all deficiencies cause additional property damage. Consequently, allowing coverage for some "property damage" resulting from defective construction does not transform a CGL policy into a performance bond and require a CGL carrier to pay anytime an insured fails to complete, or otherwise comply with, its contract.

Lennar Corp. v. Great Am. Ins. Co., 200 S.W.3d 651, 673-74 (Tex. App. 2006) (internal citations and quotations omitted); see also U.S. Fire Ins. Co. v. J.S.U.B, 979 So. 2d 871, 887-88 (Fla. 2007) ("The purpose of a performance bond is to guarantee the completion of the contract upon default by the

For an additional reason we find support for our conclusion that "accident" within the meaning of the CGL policies at issue in this case includes faulty workmanship. Although exclusionary clauses "do not grant or enlarge coverage," DeZutti, 408 N.E.2d at 1278, contract construction principles instruct us to read the pertinent provisions of insurance policies together. See Id. ("The property damages covered can only be determined by resort to the contract as a whole, including all exclusionary provisions."). As previously noted, the faulty workmanship on the Class members' homes was performed by subcontractors that Sheehan – the general contractor – hired to do the work. The CGL policies include an exclusion for damage to "your work" and then narrow the exclusion by expressly declaring that it does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Appellee Continental's App. at 105; Appellee Indiana's App. at 128, 142. If the insuring provisions do not confer an initial grant of coverage, then there would be no reasons for a "your work" exclusion. As one commentator observed:

> A court need only ask why the CGL policy includes an exclusion for property damages to the insured's own work and that of its subcontractors to understand that it would be nonsensical for the policy to include such a provision if this kind of property damage could never be caused by an "occurrence" in the first place. A court need only ask why the CGL policy specifically includes an express *exception* to the "your work" exclusion for property damage arising out of the work of a subcontractor to understand that this kind of property damage must be included in the broad scope of the term "occurrence" in the coverage grant, and that the coverage determination for this kind of property damage must be made based on the construction-specific policy exclusions.

Clifford J. Shapiro, The Good, the Bad, and the Ugly: New State Supreme Court Decisions Address Whether an Inadvertent Construction Defect is an "Occurrence" Under CGL Policies, 25 Constr. Law., Summer 2005, at 9, 12; see also Lamar Homes, 242 S.W.3d at 12 ("By incorporating the subcontractor exception into the 'your-work' exclusion, the insurance industry specifically contemplated coverage for property damage caused by a subcontractor's defective

---

contractor. Thus, unlike an insurance policy, a performance bond benefits the owner of a project rather than the contractor. Further, a surety, unlike a liability insurer, is entitled to indemnification from the contractor." (internal citations and quotation omitted)); Fid. & Deposit Co. of Md. v. Hartford Cas. Ins. Co., 189 F. Supp. 2d 1212, 1218 (D. Kan. 2002) (rejecting the argument that "if the structural damage caused by faulty workmanship constitutes an 'occurrence,' then the CGL and umbrella policies will be transformed into a performance bond" because the bond "in no way" protected the contractor or subcontractor from liability).

performance."). We agree with these authorities, and also agree that "if the insurer decides that this is a risk it does not want to insure, it can clearly amend the policy to exclude coverage, as can be done simply by either eliminating the subcontractor exception or adding a breach of contract exclusion." J.S.U.B., 979 So. 2d at 891. See also Lamar Homes, 242 S.W. 3d at 12 ("More recently, the Insurance Services Office has issued an endorsement that may be included in the CGL to eliminate the subcontractor exception to the 'your-work' exclusion.").

In this case the trial court entered summary judgment in favor of Insurers on grounds that there was no damage to property "other than to the structural components of the homes themselves" and thus there was no "occurrence" or "property damage." Appellants App. at 27. On this point the trial court erred. As we have explained faulty workmanship may constitute an accident and thus an occurrence depending on the facts. More specifically, if the defective work of the subcontractors were done intentionally instead of "without intention or design", then it is not an accident. Otherwise the opposite is true. Here, none of the parties' Trial Rule 56 materials address the question of whether the faulty workmanship was the product of intentional versus unintentional conduct. And accordingly the trial court reached no conclusion on this point.

## Conclusion

The judgment of the trial court is reversed. This cause is remanded for further proceedings.

Dickson and Boehm, JJ., concur.
Shepard, C.J., dissents with separate opinion.
Sullivan, J., dissents with separate opinion in which Shepard, C.J., joins.

15

SHEPARD, Chief Justice, dissenting.

My colleague's majority opinion is a genuine tour de force on the development of widely-used forms of commercial general liability policies and the interpretations given them by state and federal courts. Still, I conclude that it leads Indiana to the wrong result.

To make a long story short, I think these policies are neither designed nor priced as coverage for whatever demands the insured may face in the nature of ordinary consumer claims about breach of warranty. Inquiry during oral argument suggested that there may not even exist in the marketplace an insurance product that "covers me when I don't do a very good job," if you will.

As the majority recognizes, there is in the country a divide in the case law on the point we decide today. I would put us on the other side of this divide.

**Sullivan, Justice, dissenting.**

My review of the authorities convinces me that an "occurrence" under a CGL policy in the context of these cases is accidental damage caused by an insured (or an insured's subcontractors) to property owned by third parties, but not the costs of repairing defective work performed by an insured (or an insured's subcontractors).

To draw from the hypothetical that the Court deploys, it would be an "occurrence" under a CGL policy when a roof shingle that had been negligently installed by an insured's subcontractor falls and injures a passerby or breaks a window in a passing car. Why? Because it is an "accident" that causes "bodily injury" or "property damage." But the costs of repairing the defective shingle installation and resulting damage to the roof is not an occurrence. Such defective workmanship or failure to perform according to the terms of a construction contract is not an accident. To the extent that person wishes to insure against damages from defective workmanship, a performance bond and not a CGL policy provides such protection. A new case from New York makes this clear:

> A surety's performance bond and an insurer's commercial general liability policy provide two different scopes of coverage. A performance surety is to be held liable, upon the default of its principal, for the costs of completing the Contract or conforming the principal's defective work to the terms of the Contract, whereas the general liability insurer is liable for accidental damage caused by the insured to property owned by third parties (see J.Z.G. Res., Inc. v. King, 987 F.2d 98, 103 (2d Cir. 1993); Transp. Ins. Co. v. AARK Constr. Group Ltd., 526 F. Supp. 2d 350, 356 (E.D.N.Y. 2007); Bonded Concrete, Inc. v. Transcon. Ins. Co., 784 N.Y.S.2d 212 (2004); Parkset Plumbing & Heating Corp. v. Reliance Ins. Co., 448 N.Y.S.2d 739 (1982)).

400 15th St., LLC v. Promo-Pro, Ltd., 2010 N.Y. Misc. LEXIS 4339 at **27-28 (N.Y. Sup. Ct. Sept. 10, 2010). Each of the cases cited squarely stands for this limitation on CGL coverage, as does Auto-Owners Ins. Co. v. Home Pride Cos., Inc., 684 N.W.2d 571, 578 (Neb. 2004), where the court said "although a standard CGL policy does not provide coverage for faulty workmanship that damages only the resulting work product, if faulty workmanship causes bodily injury or

1

property damage to something other than the insured's work product, an unintended and unexpected event has occurred, and coverage exists."

I respectfully dissent.

Shepard, C.J., joins.