IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

GRINNELL MUTUAL REINSURANCE CO. V. FISHER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

GRINNELL MUTUAL REINSURANCE COMPANY, APPELLEE,

V.

ROBERT D. FISHER, APPELLANT, AND ROBERTA F. SMITH, APPELLEE.

Filed March 13, 2018.    No. A-16-1047.

Appeal from the District Court for Richardson County: DANIEL E. BRYAN, JR., Judge. Affirmed in part, and in part reversed and vacated, and cause remanded for further proceedings.

Douglas E. Merz and Zachary L. Blackman, of Weaver & Merz Law Office, for appellant.

Marvin O. Kieckhafer, of Smith Peterson Law Firm, L.L.P., for appellee Grinnell Mutual Reinsurance Company.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Grinnell Mutual Reinsurance Company (GMR) brought a declaratory judgment action in Richardson County District Court seeking a determination that it had no duty under a commercial general liability (CGL) policy to indemnify or defend its insured, Robert D. Fisher, in an action Roberta F. Smith filed against Fisher. (Smith filed an action against Fisher after he stopped working on a house she had contracted him to build for her.) GMR and Fisher filed motions for summary judgment; the district court found in favor of GMR and against Fisher. Fisher now appeals. We affirm in part, and in part reverse and vacate, and we remand for further proceedings.

- 1 -

## II. BACKGROUND

Fisher is a contractor who does construction and cement work individually and as Fisher Concrete Construction, Inc. Smith hired Fisher to build her a house in November 2009. Smith filed an action in Nemaha County District Court against Fisher related to his work on her house (hereinafter "Nemaha County" or "Smith" case). Fisher had a CGL policy through GMR, and he provided GMR notice of Smith's claims against him. GMR, under a reservation of rights, provided legal counsel to assist in Fisher's defense against Smith's claims. GMR subsequently filed a declaratory judgment action (at issue in this appeal) to determine its duty, if any, under the CGL policy. We begin by setting forth in more detail: (1) the facts related to Smith's lawsuit against Fisher, (2) the substance of GMR's claim for declaratory judgment, (3) the relevant portions of the CGL policy, and (4) the summary judgment motions and order.

### 1. SMITH'S LAWSUIT AGAINST FISHER

Smith entered into an agreement with Fisher to rebuild her home, which had been destroyed in a fire. The contract stated the price was no less than $106,200 and no more than $113,280, depending on the cost of supplies. She paid $60,000 up front on November 9, 2009, another $15,000 for materials on March 22, 2010, and an additional $10,000 for materials on June 16. She stated Fisher stopped work on the house while it was still largely incomplete. Smith filed her action against Fisher and Fisher Concrete Construction, Inc. on November 29, 2010. Her complaint asserted claims for (1) breach of contract for failing to complete construction of the house; (2) fraudulent misrepresentation by Fisher for representing that he had the education, skills, and tools to complete the construction; (3) quantum meruit for unjust enrichment from the payments to Fisher for work that was never completed; (4) and negligence for failing to perform the work in a good, workmanship-like manner.

Smith claimed her damages were for (1) the cost to complete the construction and correct the work, (2) the cost of non-delivery and installation of building materials performed by other contractors, (3) the loss of materials that Smith paid Fisher for but which were not delivered, (4) the $85,000 Smith paid to Fisher, (5) the cost to repair damage to portions of the home that were uninhabitable due to the unfinished work, and (6) any amount Fisher had overcharged Smith.

Smith testified in her deposition that the concrete work on the new house was done in November 2009, and house construction began in March 2010. As the construction progressed into the summer of 2010, Smith noticed the outside dimensions of the house were incorrect, several of the rooms were the incorrect size, and one room on the floor plan was missing completely, though she never took any measurements of the house or rooms herself. Smith claimed she talked to Fisher about the walls to the interior rooms being incorrect before and after the sheetrock was installed.

According to Smith, Fisher asked for another payment on July 6, 2010, and she refused. Fisher then packed up all of the materials and tools from the job site and left. Smith called Fisher on July 14 and asked if he was going to finish, but also told him she was not going to pay him "until it was correct" (meaning the floorplan and size of the rooms). After Fisher left, Smith never hired anyone to finish the work. She attempted to board up the windows and put on Tyvek wrapping to protect the house. Smith stated that as a result of the work Fisher did and his refusal to finish, some of the materials in the house rotted, the fireplace rusted, and the insulation fell down where there was no sheetrock.

Fisher testified in his deposition that he had a contract with Smith to build her house which they agreed to in November 2009. The single-paged contract did not cover all of the extra details and add-ons Smith asked for, but he thought they had a good verbal agreement on each of the extras. He had subcontractors help with some of the framing, the sheetrock, and the electrical work on Smith's house. He got into a dispute with Smith about payment for the extras on the house in July 2010, and his company quit working when she refused to pay him more money. He later tried to contact her via telephone but she told him she was not feeling well. She never contacted him again until he was served with her lawsuit on November 29.

Fisher also stated in his deposition that when he left the worksite, the sheetrock was just over 90-percent completed. None of the finishing was done in terms of trim boards, cabinetry, hanging doors, and painting, which he claimed was not part of the original contract. According to Fisher, what was complete was done properly. He stated that he was aware there was a leak coming down the fireplace, and that was the only leak to his knowledge. He also stated it was not something Smith was complaining about at the time they got into the argument that caused him to stop working on the house; it occurred after he was gone.

On March 3, 2011, GMR sent Fisher a letter regarding reservation of rights and excess liability. The letter explained GMR had received the complaint filed by Smith, and there were questions as to whether Fisher's policy covered the losses alleged in Smith's complaint. It stated any action by GMR in "investigating, adjusting, or defending this loss" did not waive GMR's right to deny coverage or withdraw from handling the case. The letter listed out several provisions of the policy that possibly precluded coverage, and also informed Fisher that GMR had hired an attorney to defend him in the lawsuit subject to GMR's right to withdraw or deny coverage. Finally, the letter also advised Fisher that GMR's reservation of rights set up a potential conflict of interest in the legal proceedings, and he may wish to consult his own attorney regarding that conflict.

2. GMR's Declaratory Judgment Action

GMR filed a complaint for declaratory judgment on December 12, 2012, against Fisher and Smith. GMR asked the court to enter a declaratory judgment against Fisher and Smith finding that the damages in Smith's case against Fisher were (1) not for "personal and advertising injury," (2) not for "bodily injury," (3) not for "property damage," and (4) not the result of an "occurrence." The complaint also asked the court to declare that even if there were "property damages" caused by an "occurrence," they were not covered by the policy because of the exclusions set forth in the policy, and therefore GMR had no duty to indemnify or defend Fisher in the action brought by Smith.

3. CGL Policy

In "Section 1 - Coverages," the CGL policy provides:
We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance policy does not apply[.]

A "suit" means "a civil proceeding in which damages because of 'bodily injury,' 'property damage,' or 'personal and advertising injury' to which this insurance applies are alleged." Fisher does not challenge the district court's order concluding that "bodily injury" or "personal and advertising injury" are not applicable to Smith's lawsuit against him. Accordingly, we set forth relevant provisions of the policy pertaining only to coverage for "property damage."

The policy covers "property damage" if the "property damage" is caused by an "occurrence" that takes place in the "coverage territory" and occurs during the policy period. "Property damage" is defined as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at *the time of the physical injury that caused it*; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

(Emphasis in original.)

According to the policy, an "[o]ccurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

There are certain exclusions to coverage GMR contends may be applicable in the event property damage caused by an occurrence is established. We set forth the relevant policy language when discussing the specific exclusions in the analysis section later in this opinion.

### 4. SUMMARY JUDGMENT MOTIONS AND ORDER

Smith and Fisher filed answers to GMR's complaint for declaratory judgment; Fisher also filed a counterclaim against GMR, seeking an order declaring that GMR has a duty to provide coverage and defend Smith's claims against him. GMR subsequently filed a motion for summary judgment on August 29, 2014. In the motion for summary judgment was a list of evidence GMR expected to offer in support of its motion; it included several depositions taken in the Nemaha County case.

Fisher filed a motion in limine on June 22, 2015, seeking to prevent GMR from using any depositions that were taken in the Nemaha County case in support of GMR's motion for summary judgment. (A second motion in limine filed on June 22, sought to exclude different evidence not relevant to this appeal). On July 17, the court ruled it would consider any sworn testimony in the motions for summary judgment, and both motions in limine were denied by the court.

After some delay resulting from Smith filing a suggestion of bankruptcy, Fisher filed a motion for summary judgment against GMR on July 16, 2016. At the hearing on GMR's and Fisher's summary judgment motions, evidence was received. In addition to the information previously set forth, we note that in an affidavit from Smith, she claimed Fisher improperly constructed the roof on her house, and as a result there was water damage to the interior of the structure. Smith further averred, "[s]aid water damaged certain property which was installed by [Fisher] and said water damaged certain property which was installed by certain subcontractors and said water damaged certain property which was property owned by [Smith] herself." Smith claimed the water damage to her property was due to faulty installation of the roof by Fisher. Smith claimed in her deposition that the fireplace was damaged, as well as the sheetrock, and potentially

some insulation. Smith said the chimney was made of plywood, which resulted in water damage. Although Smith's affidavit asserted damage to her own property, as well as to subcontractor property, she did not state what specific property was damaged.

Fisher acknowledged there was a leak, though he stated it was from the chimney. Two GMR employees, Hugh Sheridan (director of commercial underwriting) and Kami Holmes (attorney), both stated in their depositions that rain leaking through a roof could potentially constitute an occurrence in combination with faulty workmanship under the policy in question. At the summary judgment hearing, GMR's counsel stated, "I don't think the facts are abundantly clear on [damage to someone else's property as a result of what Fisher did in his construction project], but to that extent, if there's coverage under the policy for that kind of damage, it's very limited." When the district court inquired about how much damage was claimed by Smith, GMR's counsel stated there was yet not sufficient information from Smith's case regarding the damage to the property of others.

The district court entered an order on October 11, 2016, finding GMR was entitled to judgment as a matter of law. The order set forth a "Statement of Facts," which we note does not include any facts related to Smith's claims of water leakage and property being damaged as a result of alleged faulty roof installation by Fisher, as we described above. After concluding it had jurisdiction over the issues presented, the district court found that the policy "clearly denies coverage in respect to the claims of [Smith's] suit for a breach of contract and business risk of unworkmanlike conduct in the building of homes; it does cover [Fisher's] tort liability for physical injury or property damages." The court found that Smith's claims against Fisher did not involve bodily injuries. The court went on to state:

> While not apparent from the pleadings Smith's case against Fisher may involve property damage. But to be covered by the policy, the property damage must be caused by an "occurrence". Under the policy, "Occurrence" [sic] is defined as "an accident including continuous or repeated exposure to substantially the same general harmful conditions." There seems to be no occurrence as defined by the policy in regard to the claims of Smith.
>
> In fact, the policy sets out a damage to property exclusion (exhibit # 20) to clearly deny any coverage of any negligence in unworkmanship [sic] performance by Fisher.
>
> Neither is the "personal and advertising injury" liability coverage applicable to Fisher in regard to Smith's claims.

The district court then acknowledged the existence of two endorsements to the policy and generally laid out what they stated. However, the court did not explain the relevance of those endorsements, if any, to Smith's lawsuit against Fisher. The court concluded, "It is clear that Fisher does not have coverage under GMR's policy for paying or defending the Smith suit as it presently exists from the pleadings." The court found "no genuine issue of material fact that exists," and determined that GMR was entitled to judgment as a matter of law. The court denied Fisher's motion for summary judgment and dismissed Fisher's counterclaim.

Fisher appeals.

## III. ASSIGNMENTS OF ERROR

Fisher assigns, consolidated and restated, that the district court erred by (1) determining it had jurisdiction to enter an order for declaratory judgment, (2) determining the claims against Fisher were not covered by any provision of the CGL policy, (3) finding there were no genuine issues of material fact and granting GMR's motion for summary judgment, and (4) considering depositions from another case as evidence in support of GMR's motion for summary judgment.

## IV. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Waldron v. Roark*, 298 Neb. 26, 902 N.W.2d 204 (2017).

When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017).

A trial court has the discretion to determine the relevancy and admissibility of evidence, and such determinations will not be disturbed on appeal unless they constitute an abuse of that discretion. *Id.*

## V. ANALYSIS

### 1. SUBJECT MATTER JURISDICTION

Subject matter jurisdiction is the power of a tribunal to hear and determine a case in the general class or category to which the proceedings in question belong and to deal with the general subject matter involved. *J.S. v. Grand Island Public Schools*, 297 Neb. 347, 899 N.W.2d 893 (2017). But the question of a court's subject matter jurisdiction does not turn solely on the court's authority to hear a certain class of cases. *In re Interest of Trey H.*, 281 Neb. 760, 798 N.W.2d 607 (2011). Instead, it also involves determining whether a court has authority to address a particular question that it assumes to decide or to grant the particular relief requested. *Id.*

Fisher argues that since no judgment has been rendered against him in the Nemaha County case, a declaratory judgment action cannot be used to determine the legal effects of a set of facts which are future, contingent, or uncertain. He argues that without a judgment obtained against him, no controversy yet exists, and therefore the district court had no jurisdiction over the case.

This same argument was raised by the insured in *Cincinnati Ins. Co. v. Becker Warehouse, Inc.*, 262 Neb. 746, 635 N.W.2d 112 (2001), and the Nebraska Supreme Court held that the district court did have subject matter jurisdiction over the insurance company's declaratory judgment action even though underlying damages had not yet been determined. The insured in *Cincinnati Ins. Co.* was sued for damages to food products stored in the insured's warehouse. A sealant (a hazardous air pollutant) had been applied to the warehouse's concrete floor and it was alleged that fumes from the sealant contaminated the food products. Before the insured's liability for damages had been determined, the insured's insurance company filed for a declaratory judgment on the grounds that the damages at issue were excluded from coverage under a pollution exclusion contained in the insured's policy. Like the district court in the present matter, the district court in *Cincinnati Ins. Co.* granted summary judgment in favor of the insurance company. The district

court found, as a matter of law, that there was no coverage for the alleged damages based on the policy's pollution exclusion. And, as Fisher does here, the insured in *Cincinnati Ins. Co.* relied upon *Allstate Ins. Co. v. Novak*, 210 Neb. 184, 313 N.W.2d 636 (1981), for the proposition that a declaratory judgment could not be granted until the potential damages were determined. Accordingly, as the Nebraska Supreme Court did in *Cincinnati Ins. Co.*, we take a moment to consider the applicability, if any, of *Novak* to the case before us.

In *Novak*, the Nebraska Supreme Court stated that there must be an actual controversy in order to maintain an action for declaratory judgment. Further, a declaratory judgment "cannot be used to decide the legal effect of a state of facts which are future, contingent, or uncertain." *Allstate Ins. Co. v. Novak*, 210 Neb. at 188, 313 N.W.2d at 638. In *Novak*, the insured assaulted a man, but claimed he did so in self-defense. When the assault victim sued the insured, the insured called upon the insurance company to provide a defense and to pay sums which the insured might be legally obligated to pay. The insurance company refused to provide coverage based upon an exclusion in the policy for bodily injury which is either expected or intended from the standpoint of the insured. The district court entered a declaratory judgment in favor of the insurance company.

On appeal, the Nebraska Supreme Court in *Novak* said that "[t]he question now presented to us is whether we can judicially determine whether [the insurance company] is required to make payment on behalf of [the insured]. However, until it is determined that [the insured] is legally obligated to pay [the assault victim], the question of [the insurance company's] obligation is uncertain and contingent." *Id*. at 188-89, 313 N.W.2d at 639. The court held that injuries resulting from actions taken in self-defense are not expected or intended within the meaning of the policy. Therefore, the damages caused by the insured were potentially covered. The Nebraska Supreme Court reversed the declaratory judgment, finding that "unless and until a final determination is in fact made that [the insured] is legally obligated to pay," then the question of whether the insurance company had an obligation to pay on behalf of the insured could not be decided." *Id*. at 193, 313 N.W.2d at 641.

Notably, *Novak* also stated:

> We are not suggesting by this opinion that there may never be an appropriate instance where the carrier may seek declaratory relief prior to the insured's liability being ascertained. There may, indeed, be situations where the language of the policy is such that the carrier's obligation to pay can be determined even before the insured's liability is determined.

*Id.* at 189, 313 N.W.2d at 639.

In *Cincinnati Ins. Co.*, the Nebraska Supreme Court addressed its holding in *Novak*, noting that bodily injury was clearly covered by the policy, but that the pending case against the insured would determine whether or not the injury was intentional and therefore excluded under the policy's coverage. However, in *Cincinnati Ins. Co.*, the language of the policy at issue contained an exclusion for damages arising from pollutants, which the insured claimed was ambiguous. *Cincinnati Ins. Co.* pointed out that *Novak* "turned on facts; this case turns on law[,]" and therefore, "the district court had subject matter jurisdiction over the declaratory judgment[.]" *Cincinnati Ins. Co. v. Becker Warehouse, Inc.*, 262 Neb. at 753, 635 N.W.2d at 118. The Nebraska Supreme Court

concluded that the contamination incident fell within the pollution exclusion in the policy, and affirmed the district court's decision.

We agree with GMR that a declaratory judgment can be entered when it is clear from the language of the policy that the insured's actions are not covered by the policy. An insurer may petition a court to declare, pursuant to Neb. Rev. Stat. § 25-21,149 (Reissue 2016) of Nebraska's Uniform Declaratory Judgments Act, whether an insured's conduct or a specific event is excluded from coverage under a policy of insurance. *American Fam. Mut. Ins. Co. v. Hadley*, 264 Neb. 435, 648 N.W.2d 769 (2002). Where it is proved that a specific event or type of conduct is beyond the terms of an insurance policy, a court may enter a declaratory judgment that the insurer is not obligated to provide coverage to the insured for the event or conduct. *Id.*

Accordingly, GMR's declaratory judgment action seeking to establish what was not covered under the CGL policy was properly before the district court. We now turn to the district court's interpretation of the CGL policy.

## 2. INTERPRETATION OF CGL POLICY

### (a) Coverage for Property Damage

As set forth previously, the policy covers property damage if the property damage is caused by an "occurrence," and an "[o]ccurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Although the district court determined Smith's claims against Fisher "may involve property damage," the court nevertheless concluded there "seems to be no occurrence as defined by the policy." The court acknowledged the existence of the two endorsements which modify coverage, however, other than generally setting forth what they stated, the court did not provide any explanation as to why the endorsements would or would not be applicable to any of Smith's claims against Fisher. The court then concluded, "It is clear that Fisher does not have coverage under GMR's policy for paying or defending the Smith suit as it presently exists from the pleadings."

Fisher argues that the district court erred by determining there was no "occurrence." Fisher asserts that because Smith alleged Fisher's negligent roofing caused water to leak and resulted in damage to her property and the property of others, this meets the definition of an occurrence. He also claims that the endorsements to the policy provide coverage for damages to the injury or destruction of property of others (including loss of use) while in the care, custody, or control of Fisher.

The interpretation of an insurance policy is a question of law. *Fokken v. Steichen*, 274 Neb. 743, 744 N.W.2d 34 (2008). When reviewing questions of law, an appellate court has an obligation to resolve the questions independently of the conclusion reached by the trial court. *Id.*

In construing insurance contracts, the Nebraska Supreme Court has stated:

An insurance policy is a contract between an insurance company and an insured, and as such, the insurance company has the right to limit its liability by including limitations in the policy definitions. If the definitions in the policy are clearly stated and unambiguous, the insurance company is entitled to have such terms enforced.

Insurance contracts, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used. If the terms of the contract are clear and unambiguous, they are to be taken and understood in their plain, ordinary, and popular

sense. An ambiguity exists only when the policy can be interpreted to have two or more reasonable meanings. The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them.

*Fokken v. Steichen*, 274 Neb. at 751, 744 N.W.2d at 40-41.

We find *Auto-Owners Ins. Co. v. Home Pride Cos.*, 268 Neb. 528, 684 N.W.2d 571 (2004), to be helpful in considering the CGL policy at issue before this court. In *Home Pride Cos.*, the Nebraska Supreme Court, as a matter of first impression, considered whether damage caused by faulty workmanship was covered under a standard CGL insurance policy. The policy in *Home Pride Cos.*, like the policy at issue here, provided coverage for "property damage" if it is caused by an "occurrence." In *Home Pride Cos.*, it was alleged that the insureds' faulty workmanship in their installation of roof shingles on apartment buildings (they were breaking apart and falling off roofs) caused substantial and material damage to the roof structures and buildings. The insurance company filed a declaratory judgment action, claiming the policy did not provide coverage because faulty workmanship did not constitute an "occurrence" under the policy. *Id*. at 533, 684 N.W.2d at 576. On competing motions for summary judgment, the district court granted summary judgment in favor of the insurance company.

The CGL policy in *Home Pride Cos.*, again like the policy at issue here, defined occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. Observing that although the term "accident" was not defined in the policy, the Nebraska Supreme Court noted that "we have previously stated that 'an accident within the meaning of liability insurance contracts includes any event which takes place without the foresight or expectation of the person acted upon or affected thereby.'" *Id*. (quoting *Farr v. Designer Phosphate & Premix Internat.*, 253 Neb. 201, 570 N.W.2d 320 (1997)). The court further stated:

> Whether faulty workmanship fits within the aforementioned definition of accident is a difficult question, and courts have answered it in a variety of ways. For example, a relatively small number of courts have determined that the damage that occurs as a result of faulty or negligent workmanship constitutes an accident, so long as the insured did not intend for the damage to occur. [Citations omitted.]
>
> However, the majority of courts have determined that faulty workmanship is not an accident, and, therefore, not an occurrence.

*Auto-Owners Ins. Co. v. Home Pride Cos.*, 268 Neb. at 533, 684 N.W.2d at 576.

The Nebraska Supreme Court aligned with the majority rule and concluded that "faulty workmanship, standing alone, is not covered under a standard CGL policy because it is not a fortuitous event." *Id*. at 535, 684 N.W.2d at 577. "Important here, although faulty workmanship, *standing alone*, is not an occurrence under a CGL policy, an accident caused by faulty workmanship is a covered occurrence." *Id*. (Emphasis in original.) "Stated otherwise, although a standard CGL policy does not provide coverage for faulty workmanship that damages only the resulting work product, if faulty workmanship causes bodily injury or property damage to something other than the insured's work product, an unintended and unexpected event has occurred, and coverage exists." *Id*. at 535, 684 N.W.2d at 578.

Referring to a New Hampshire case, the *Home Pride Cos.* court noted that in a lawsuit brought against builders for negligent construction of some condominiums' exterior walls, the claims for faulty workmanship, standing alone, did not constitute an "occurrence" within the meaning of a CGL policy. However the claim against the builders not only requested compensation to repair and replace the poorly constructed exterior walls, but also requested compensation for water damage that allegedly occurred as a result of the builder's faulty workmanship. The consequential damages from the water damage constituted accidental damage to property other than the insured's own work product, and was therefore a proper claim for property damage caused by an occurrence. See *Home Pride Cos., supra*.

Accordingly, in *Home Pride Cos.*, the Nebraska Supreme Court concluded that as a consequence of the faulty work by the insured (installing shingles), it was alleged that the roof structures and buildings experienced substantial damage. This allegation "represents an unintended and unexpected consequence of the contractor's faulty workmanship and goes beyond damages to the contractor's own work product." *Id.* at 537, 684 N.W.2d at 579. "Therefore, the amended petition properly alleged an occurrence within the meaning of the insurance policy." *Id.*

The same is true in the case before this court. Although Smith's pleading in the Nemaha County case does not specifically allege damage to the property of others, she does allege negligence on Fisher's part for failing to perform the work in a good, workmanship-like manner. In the evidence submitted for summary judgment purposes, Smith claimed damages to property owned by herself, as well as to subcontractor property, as a result of Fisher's alleged faulty workmanship. Specifically, Smith claimed water damaged the home due to Fisher's negligent roofing. Fisher acknowledged there was a leak, but claimed it was from the chimney. Smith claimed the fireplace was damaged, as well as the sheetrock, and potentially some insulation. Smith said the chimney was made of plywood, which resulted in water damage. Two GMR employees both stated that rain leaking through a roof could potentially constitute an occurrence in combination with faulty workmanship under the policy in question.

Notably, the district court found that Smith's case against Fisher "may involve property damage," but that there was no "occurrence." We determine, however, that *Home Pride Cos., supra*, requires a different conclusion. Smith's allegations of property damage represent unintended and unexpected consequences of Fisher's alleged faulty workmanship and go beyond damages related to Fisher's own work product; accordingly, such claims of property damage sufficiently allege an occurrence within the meaning of the CGL insurance policy. We therefore reverse and vacate the portion of the district court's order concluding otherwise.

(b) Policy Exclusions

Concluding there was an occurrence does not end our analysis regarding coverage under the CGL policy; we must now consider whether any policy exclusions would prevent coverage. Once again, we find guidance in *Home Pride Cos., supra*. In that case, after determining that the claim against the insureds sufficiently alleged property damage caused by an occurrence, the Nebraska Supreme Court turned to the policy exclusions, noting that the "burden to prove that an exclusionary clause applies rests upon the insurer." *Auto-Owners Ins. Co. v. Home Pride Cos.*, 268 Neb. at 537, 684 N.W.2d at 579. In *Home Pride Cos.*, the insurance company claimed that there was no coverage because of exclusions related to damages claimed for any loss, cost or expense

incurred by "you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: . . . 'Your work'; or . . . 'Impaired property'; if such . . . work or property is withdrawn . . . from use . . . 'because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.'" *Id.* In considering those exclusions, the Nebraska Supreme Court stated:

> Generally speaking, the "your work" exclusions . . . operate to prevent liability policies from insuring against an insured's own faulty workmanship, which is a normal risk associated with operating a business. [Citations omitted.] Essentially, the rationale behind the "your work" exclusions is that they discourage careless work by making contractors pay for losses caused by their own defective work, while preventing liability insurance from becoming a performance bond. [Citations omitted.]

*Id.* at 538, 684 N.W.2d at 579.

In *Auto-Owners Ins. Co. v. Home Pride Cos.*, 268 Neb. 528, 684 N.W.2d 571 (2004), the Nebraska Supreme Court concluded the CGL policy's exclusions did not apply to the damage claim at issue before it because the claim extended beyond the cost to simply repair and replace the contractor's work, such as reshingling the roofs. The court found that the damage to the roof structures and buildings fell outside the exclusion. Additionally, in considering the exclusion related to "impaired property," it noted that property is not impaired unless it is capable of being restored by the repair, replacement, adjustment or removal of "your work," or by fulfilling the terms of the contract or agreement. In *Home Pride Cos.*, the court concluded that because the damage to the roof structures and buildings could not be repaired or restored by simply reshingling the apartment roofs, the damages were not "impaired property" within the meaning of the exclusion. *Id.* at 538-39, 684 N.W.2d at 580.

In the present matter, GMR argues the following exclusions apply: (a) contractual liability, (b) damage to property, (c) impaired property, (d) expected or intended injury, and (e) property damage to "your product" and property damage to "your work." Of these exclusions, we find that *Home Pride Cos.*, as discussed above, similarly applies to two exclusions raised by GMR: (c) impaired property and (e) property damage to "your product" and "your work," so we address those first.

As for impaired property, the damages to property belonging to Smith or others cannot be repaired or restored by simply fixing the faulty workmanship (roof or chimney), as was the case in *Home Pride Cos., supra*, where the court found simply replacing the faulty shingles would not repair or restore the damage to the roof structures or buildings. Accordingly, as the court did in *Home Pride Cos.*, we conclude that the damage to the property of others alleged in this case cannot be "impaired property."

As for property damage to "your product" and "your work," *Home Pride Cos., supra*, provides that "your work" exclusions "operate to prevent liability policies from insuring against an insured's own faulty workmanship, which is a normal risk associated with operating a business." *Id.*, 268 Neb. at 538, 684 N.W.2d at 579. This explanation for "your work" exclusions can be similarly applied to "your product" exclusions. These exclusions apply to the faulty workmanship or faulty products of the insured. Property damage to property of others does not

- 11 -

constitute damage to "your product" (goods manufactured, sold, handled, distributed or disposed of by insured) or "your work" (work or operations performed by the insured or on his behalf, and the materials furnished in connection with his work). We conclude the "your product" and "your work" exclusions are not applicable when the property damage is to the property of others.

We now address the remaining three exclusions GMR argues apply to Smith's claims against Fisher.

### (i) Exclusion for Contractual Liability

The provision excludes coverage for "property damage" "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." However, "[t]his exclusion does not apply to liability for damages . . . [t]hat the insured would have in the absence of the contract or agreement[.]"

Fisher does not challenge the district court's determination that the policy excluded coverage with respect to Smith's claims for breach of contract, and we agree that this exclusion would preclude such coverage. Accordingly, we affirm the district court's order as to Smith's claims against Fisher for breach of contract.

### (ii) Damage to Property Exclusion

The language of this exclusions states:

> j. Damage to Property
>
> [Excludes coverage for] "[p]roperty damage" to: . . . (4) Personal property in the care, custody or control of the insured; (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations; or (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

We note that although subsection j.(4) of this exclusion appears to exclude coverage for personal property damage under Fisher's "care, custody or control," there is an endorsement that modifies subsection j.(4); and provides coverage for:

> [D]estruction of property of others (including the loss of use thereof), while in the care, custody or control of an insured or property as to which an insured for any purpose is exercising physical control, caused by an accident and arising out of the installation, repair, alteration or other operations of your business described by and covered by [the CGL policy].

This particular endorsement may potentially provide coverage for the damages alleged to be at issue here. The limit of insurance under this endorsement for all property damage arising out of any one occurrence is $5,000 (with a $250 deductible), with a $25,000 total aggregate limit per policy year. The endorsement has an exclusion, which, among other things, excludes the cost of repairing or replacing any work defectively or incorrectly performed or completed by an insured or subcontractor.

There is also an endorsement that modifies subsections j.(5) and j.(6) of the "Damage to Property" exclusion set forth above, which states:

> [W]e agree with you to pay at your request for "property damage" to property of others in the care, custody or control of an insured caused by an "occurrence" and arising out of your operations away from your insured premises.

This endorsement states, however, that the insurer "shall have no duty whatsoever to defend claims and/or lawsuits for which the only coverage provided is under this endorsement." The limit under this endorsement is $1,000 for each occurrence (with a $250 deductible), with a $5,000 aggregate limit.

In light of the endorsements noted, some of the "damage to property" owned by Smith or others alleged to be at issue in Smith's action may fall under these endorsements. Therefore, GMR's argument that the "Damage to Property" exclusion applies and should exclude coverage is not consistent with the plain reading of the language contained in the endorsements to this exclusion.

### (iii) Expected or Intended Injury Exclusion

This provision excludes coverage for "property damage" "expected or intended from the standpoint of the insured." GMR claims that Fisher could expect there would be a claim against him for damages if he stopped construction and abandoned the property, or if he did not construct the house in a workmanlike manner, or if he did not perform under the terms of the construction contract. However, according to Fisher, the house was 90-percent complete and what was complete was done properly. Further, Fisher claimed the leak occurred after he had stopped working on the house. The damage to personal property from water leakage into the house was not something Fisher expected or intended. This exclusion does not apply.

### (c) Summary of Coverage and Exclusions

The CGL policy covers "property damage" if the "property damage" is caused by an "occurrence." As in other standard CGL policies, the policy at issue here does not provide coverage for faulty workmanship that damages only the resulting work product. But if faulty workmanship causes property damage to something other than the insured's work product, an unintended and unexpected event has occurred, and coverage exists. See *Auto-Owners Ins. Co. v. Home Pride Cos.*, 268 Neb. 528, 684 N.W.2d 571 (2004). Some of Smith's claims against Fisher regarding damage to property owned by Smith or others may represent an unintended and unexpected consequence of Fisher's alleged faulty workmanship and go beyond damages to Fisher's own work product. Therefore, since some of Smith's claims against Fisher properly allege an occurrence within the meaning of the CGL policy, coverage exists.

As for coverage exclusions, we agree that Smith's claims against Fisher for a breach of contract are not covered by the CGL policy. Further, any of Smith's claims related to faulty workmanship by Fisher are not covered. However, none of the other exclusions asserted by GMR serve to exclude Smith's allegations of damage to property owned by her or others, although, as previously noted, the endorsements may limit the amount of coverage available.

As has become apparent, this court agrees, in part, and disagrees, in part, with the district court's interpretation of the CGL policy at issue. Therefore, we next address how this court's interpretation of the policy affects the district court's order granting summary judgment on GMR's complaint for a declaratory judgment.

3. SUMMARY JUDGMENT

Both GMR and Fisher filed motions for summary judgment. As to their underlying requests for relief, GMR had initiated the action seeking a declaratory judgment against Fisher and Smith finding that the damages in Smith's case against Fisher were (1) not for "personal and advertising injury," (2) not for "bodily injury," (3) not for "property damage," and (4) not the result of an "occurrence." GMR's complaint also asked the court to declare that even if there were "property damages" caused by an "occurrence," they were not covered by the policy because of the exclusions set forth in the policy, and therefore GMR had no duty to indemnify or defend Fisher in the action brought by Smith. Fisher's counterclaim asked the district court to "declare" that GMR had a duty to provide coverage and defend Fisher as to Smith's claims against him.

The district court concluded there were no genuine issues of material fact and that GMR was entitled to judgment as a matter of law; the court held that Fisher did not have coverage under the CGL policy "for paying or defending the Smith suit." The court dismissed Fisher's counterclaim.

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Fokken v. Steichen*, 274 Neb. 743, 744 N.W.2d 34 (2008).

Based upon facts not in dispute, the district court interpreted the contract correctly, in part. The court properly concluded that the damages in Smith's case against Fisher were not for "personal and advertising injury," and were not for "bodily injury." The court also correctly concluded that Smith's claims against Fisher for a breach of contract or faulty workmanship are not covered by the CGL policy. There were no material facts in dispute precluding the court from reaching these conclusions as a matter of law. The district court's summary judgment order in favor of GMR is affirmed as to these determinations.

However, the district court erred, in part, in its interpretation of the CGL policy related to property damage and whether or not there was an occurrence, as we have already discussed. As a result, the court failed to consider the materiality of certain facts related to Smith's claim of damages to property owned by her or others. Although the district court acknowledged that "Smith's case against Fisher may involve property damage," it did not consider the facts pertinent to that property damage because it concluded that any such property damage must be caused by an occurrence, and "[t]here seems to be no occurrence as defined by the policy[.]"

Since this court has determined, as a matter of law, that Smith's claims of damage to property owned by her or others as a result of Fisher's alleged faulty workmanship sufficiently establishes an occurrence under the policy, the facts related to such damages are material and cannot be determined on the present record. There remain issues of fact regarding what property was actually damaged and whether or not the damage was the result of faulty workmanship by Fisher. Therefore, summary judgment should not have been granted as to GMR's request for an

- 14 -

order declaring that the damages in Smith's case against Fisher were not the result of an occurrence and were not for property damage. Accordingly, those portions of the district court's order: (1) holding there was no occurrence, (2) holding that Fisher has no coverage under the policy "for paying or defending the Smith suit," and (3) dismissing Fisher's counterclaim, are reversed and vacated, and we remand the matter to the district court for further proceedings.

### 4. Depositions From Nemaha County Case

GMR provided notice to Fisher that in support of its motion for summary judgment, it intended to offer depositions from the Nemaha County lawsuit. Fisher filed a motion in limine to exclude those depositions, and he assigns error to the district court's decision denying his motion and allowing the depositions. Although resolution of this issue is not particularly necessary given our decision, we nevertheless address it for the sake of completeness.

Neb. Rev. Stat. § 25-1332(1) (Supp. 2017) states: "The evidence that may be received on a motion for summary judgment includes depositions, answers to interrogatories, admissions, stipulations, and affidavits." Although Fisher acknowledges that the statute "is not specific on what types of depositions should be considered as evidence," he suggests that "depositions from other cases involve different issues, theories of the case, strategies employed and different attorneys," and that they "exceed the proper scope of the summary judgment statute." Brief for appellant at 11. He suggests it is problematic when the depositions at issue were obtained by an attorney hired by GMR to defend Fisher in the Nemaha County action, and then used by GMR in the present case in an attempt to deny coverage and a defense for Fisher.

In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *O'Brien v. Cessna Aircraft Co.*, 298 Neb. 109, 903 N.W.2d 432 (2017). We fail to see how the deposition testimony unfairly prejudiced Fisher. The underlying facts in the Nemaha County action are relevant to a determination of coverage under the CGL policy. And as noted by GMR, the witnesses had personal knowledge of the facts stated, the facts in the deposition would be admissible in evidence, and the witnesses were competent to testify as to the matters involved. The district court did not abuse its discretion by admitting the depositions from the Nemaha County case for the purpose of considering GMR's motion for summary judgment in the present matter.

### VI. CONCLUSION

For the reasons set forth above, we affirm the district court's ruling that it had subject matter jurisdiction over the action for a declaratory judgment, and its ruling allowing the use of depositions from the Nemaha County case in support of GMR's motion for summary judgment. We affirm the order granting summary judgment in favor of GMR regarding the damages in Smith's case against Fisher not being damages for "personal and advertising injury," or "bodily injury." We also affirm the summary judgment order as to the district court's conclusion that Smith's claims against Fisher for breach of contract or faulty workmanship are not covered by the CGL policy.

We reverse and vacate those portions of the district court's summary judgment order: (1) holding there was no occurrence, (2) holding that Fisher has no coverage under the policy "for

- 15 -

paying or defending the Smith suit," and (3) dismissing Fisher's counterclaim. The matter is remanded for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND VACATED, AND CAUSE REMANDED FOR FURTHER PROCEEDINGS.